DocuSign Envelope ID: FA83D205-41D0-4FDC-A930-2816D7987BBB

# Exhibit A

# Budget

DocuSign Envelope ID: FA83D205-41D0-4EDC-ADC0-AD30-3816D7987BBB

*Preliminary Draft - Confidential*

**Golden Fleece Beverages, Inc.**
**Cash Receipts and Payments**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending: | 29-Oct-21 | 5-Nov-21 | 12-Nov-21 | 19-Nov-21 | 26-Nov-21 | 3-Dec-21 | 10-Dec-21 | 17-Dec-21 | 24-Dec-21 | 31-Dec-21 | 7-Jan-22 | 14-Jan-22 | 21-Jan-22 |
| Shopify Receipts | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| CPG Receipts (Walgreens) | - | - | - | - | - | - | 760,945 | 18,593 | - | 42,965 | 45,980 | 45,980 | 45,980 |
| CPG Receipts (Kwik Trip) | - | - | - | - | 28,482 | - | - | - | - | - | - | - | - |
| CPG Receipts (Other) | - | 14,689 | - | 1,970 | 14,815 | - | - | - | - | - | - | - | - |
| Licensing Receipts | 2,438 | 16,968 | 3,960 | 16,278 | 7,238 | 10,490 | 3,084 | 7,056 | 5,916 | 10,490 | 3,084 | 7,056 | 7,056 |
| DIP Loan | 145,000 | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | **147,688** | **31,907** | **4,210** | **18,498** | **50,785** | **10,740** | **764,279** | **25,900** | **15,266** | **59,420** | **49,314** | **53,286** | **53,286** |
| | | | | | | | | | | | | | |
| Payroll (6 Employees) | - | 24,000 | - | 24,000 | - | 24,000 | - | 24,000 | - | - | 24,000 | - | 24,000 |
| Commission Payout | - | - | - | - | - | 440 | - | 21,045 | - | - | 2,258 | - | - |
| SS Tax Deferral Repayment | - | - | - | - | - | - | - | - | - | 6,494 | - | - | - |
| Expense Report Estimates | - | 19,869 | - | - | - | - | 6,275 | - | - | - | 6,275 | - | - |
| CPG Production | 19,000 | - | - | - | 12,675 | - | 86,600 | - | 40,000 | - | - | - | - |
| Retail Production | - | - | - | - | - | - | - | 13,640 | - | - | - | - | - |
| Warehousing | 375 | 375 | 375 | 375 | 375 | 2,175 | 375 | 375 | 375 | 375 | 2,175 | 375 | 375 |
| Transportation | 8,000 | 10,000 | 10,000 | 10,000 | - | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Chapter 11 DIP Professionals | 70,000 | - | - | - | - | - | 100,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Insurance (Health & Business) | - | 452 | 2,355 | 1,834 | - | 452 | - | 4,189 | - | - | 452 | 3,418 | 3,418 |
| Storage | - | 972 | - | - | - | 972 | - | - | - | - | 972 | - | - |
| G&A | - | 2,000 | - | - | - | 2,000 | - | - | - | - | 2,000 | - | - |
| Retail | - | - | - | 2,000 | - | 2,000 | - | 2,000 | - | 2,000 | - | 2,000 | 2,000 |
| Taxes (Franchise & Sales) | - | - | - | - | - | - | 1,124 | - | - | - | - | - | - |
| Cure Amounts | - | - | - | - | - | - | 49,303 | 15,026 | 29,248 | 21,416 | - | 35,846 | - |
| DIP Loan Repayment | - | - | - | - | - | - | 145,000 | - | - | - | - | - | - |
| Bank/CC Fees | 150 | - | - | - | - | 100 | - | - | - | - | 50 | - | - |
| **Total Payments** | **97,525** | **57,668** | **12,730** | **38,209** | **13,050** | **42,139** | **398,677** | **115,275** | **104,623** | **65,285** | **73,182** | **76,639** | **64,793** |
| | | | | | | | | | | | | | |
| **Net Flow** | 50,163 | (25,761) | (8,520) | (19,711) | 37,735 | (31,399) | 365,602 | (89,376) | (89,357) | (5,865) | (23,868) | (23,352) | (11,506) |
| | | | | | | | | | | | | | |
| **Balance** | 50,163 | 24,402 | 15,881 | (3,830) | 33,905 | 2,506 | 368,108 | 278,732 | 189,375 | 183,510 | 159,642 | 136,289 | 124,783 |

**Assumptions**

*CPG Receipts*
Kwik Trip receipt targeted at Day 30, but this may be aggressive. Associated customer deduction is an assumption made based on past practice.

Walgreens receipt targeted at Day 45, but this may be aggressive. Line item accounts for associated customer deduction credits totaling $224,267.36.

Payments/escrows showing as paid/deposited in Week 7 to be paid/deposited sooner if CPG Receipts are paid to Debtor sooner.

*Licensing Receipts*
Assumes business revenue consistent with previous months

*Retail*
Estimates $2,000 in expenses to purchase goods (branded paper/plastics)

*Expense Report Estimates*
Payments represent reimbursement of expenses advanced on behalf of the Debtor and submitted for reimbursement in the ordinary course. These include both: (a) customary charges for travel, lodging, and meals; and (b) certain online software platform subscriptions, overnight service charges, and freight charges paid on the Debtor's behalf using individual credit cards when no other method of payment is accepted within the necessary timeframe.

*Chapter 11 DIP Professionals*
To be paid to escrow account only; actual payments permitted only upon Bankruptcy Court approval.

*Cure Amounts*
Payment of cure amounts assumes approval of planned motions to assume and counterparties agreeing to payment plans.

# Exhibit B

*Preliminary Draft - Confidential*

**Golden Fleece Beverages, Inc.**
**Cash Receipts and Payments**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending: | 29-Oct-21 | 5-Nov-21 | 12-Nov-21 | 19-Nov-21 | 26-Nov-21 | 3-Dec-21 | 10-Dec-21 | 17-Dec-21 | 24-Dec-21 | 31-Dec-21 | 7-Jan-22 | 14-Jan-22 | 21-Jan-22 |
| Shopify Receipts | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| CPG Receipts (Walgreens) | - | - | - | - | - | - | 760,945 | 18,593 | - | 42,965 | 45,980 | 45,980 | 45,980 |
| CPG Receipts (Kwik Trip) | - | - | - | - | 28,482 | - | - | - | - | - | - | - | - |
| CPG Receipts (Other) | - | 14,689 | - | 1,970 | 14,815 | - | - | - | 9,100 | 5,715 | - | - | - |
| Licensing Receipts | 2,438 | 16,968 | 3,960 | 16,278 | 7,238 | 10,490 | 3,084 | 7,056 | 5,916 | 10,490 | 3,084 | 7,056 | 7,056 |
| DIP Loan | 145,000 | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | **147,688** | **31,907** | **4,210** | **18,498** | **50,785** | **10,740** | **764,279** | **25,900** | **15,266** | **59,420** | **49,314** | **53,286** | **53,286** |
| | | | | | | | | | | | | | |
| Payroll (6 Employees) | - | 24,000 | - | 24,000 | - | 24,000 | - | 24,000 | - | - | 24,000 | - | 24,000 |
| Commission Payout | - | - | - | - | - | 440 | - | 21,045 | - | - | 2,258 | - | - |
| SS Tax Deferral Repayment | - | - | - | - | - | - | - | - | - | 6,494 | - | - | - |
| Expense Report Estimates | - | 19,869 | - | - | - | - | 6,275 | - | - | - | 6,275 | - | - |
| CPG Production | 19,000 | - | - | - | 12,675 | - | 86,600 | - | 40,000 | - | - | - | - |
| Retail Production | - | - | - | - | - | - | - | 13,640 | - | - | - | - | - |
| Warehousing | 375 | 375 | 375 | 375 | 375 | 2,175 | 375 | 375 | 375 | 375 | 2,175 | 375 | 375 |
| Transportation | 8,000 | 10,000 | 10,000 | 10,000 | - | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Chapter 11 DIP Professionals | 70,000 | - | - | - | - | - | 100,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Insurance (Health & Business) | - | 452 | 2,355 | 1,834 | - | 452 | - | 4,189 | - | - | 452 | 3,418 | 3,418 |
| Storage | - | 972 | - | - | - | 972 | - | - | - | - | 972 | - | - |
| G&A | - | 2,000 | - | - | - | 2,000 | - | - | - | - | 2,000 | - | - |
| Retail | - | - | - | 2,000 | - | 2,000 | - | 2,000 | - | 2,000 | - | 2,000 | 2,000 |
| Taxes (Franchise & Sales) | - | - | - | - | - | - | 1,124 | - | - | - | - | - | - |
| Cure Amounts | - | - | - | - | - | - | 49,303 | 15,026 | 29,248 | 21,416 | - | 35,846 | - |
| DIP Loan Repayment | - | - | - | - | - | - | 145,000 | - | - | - | - | - | - |
| Bank/CC Fees | 150 | - | - | - | - | 100 | - | - | - | - | 50 | - | - |
| **Total Payments** | **97,525** | **57,668** | **12,730** | **38,209** | **13,050** | **42,139** | **398,677** | **115,275** | **104,623** | **65,285** | **73,182** | **76,639** | **64,793** |
| | | | | | | | | | | | | | |
| **Net Flow** | **50,163** | **(25,761)** | **(8,520)** | **(19,711)** | **37,735** | **(31,399)** | **365,602** | **(89,376)** | **(89,357)** | **(5,865)** | **(23,868)** | **(23,352)** | **(11,506)** |
| | | | | | | | | | | | | | |
| **Balance** | **50,163** | **24,402** | **15,881** | **(3,830)** | **33,905** | **2,506** | **368,108** | **278,732** | **189,375** | **183,510** | **159,642** | **136,289** | **124,783** |

**Assumptions**

*CPG Receipts*
Kwik Trip receipt targeted at Day 30, but this may be aggressive. Associated customer deduction is an assumption made based on past practice.

Walgreens receipt targeted at Day 45, but this may be aggressive. Line item accounts for associated customer deduction credits totaling $224,267.36.

Payments/escrows showing as paid/deposited in Week 7 to be paid/deposited sooner if CPG Receipts are paid to Debtor sooner.

*Licensing Receipts*
Assumes business revenue consistent with previous months

*Retail*
Estimates $2,000 in expenses to purchase goods (branded paper/plastics)

*Expense Report Estimates*
Payments represent reimbursement of expenses advanced on behalf of the Debtor and submitted for reimbursement in the ordinary course. These include both: (a) customary charges for travel, lodging, and meals; and (b) certain online software platform subscriptions, overnight service charges, and freight charges paid on the Debtor's behalf using individual credit cards when no other method of payment is accepted within the necessary timeframe.

*Chapter 11 DIP Professionals*
To be paid to escrow account only; actual payments permitted only upon Bankruptcy Court approval.

*Cure Amounts*
Payment of cure amounts assumes approval of planned motions to assume and counterparties agreeing to payment plans.

☐

SFGH:4812-3155-8655v6

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) MAINTAIN EXISTING BANK ACCOUNTS; (2) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM; (3) CONTINUE USING EXISTING BUSINESS FORMS; (4) MODIFY INVESTMENT & DEPOSIT REQUIREMENTS UNDER 11 U.S.C. § 345(b); & (5) RELATED RELIEF**

Golden Fleece Beverages, Inc., the debtor and debtor in possession (the "***Debtor***") in the above-captioned Chapter 11 case (the "***Case***") submits this emergency motion (the "***Motion***") seeking interim and final orders, substantially in the form attached here, authorizing the Debtor to (1) continue using its cash management system subject to modifications as set forth in this Motion; (2) maintain its existing bank accounts; (3) continue using existing business forms; (4) modify certain investment & deposit requirements imposed by 11 U.S.C. § 345(b) for cause; and (5) granting related relief. In support of the Motion, the Debtor states:

### JURISDICTION & VENUE

1.     The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this Case and the Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 105, 345, 363, 1184, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

### BACKGROUND

3.     The Debtor filed this Case on October 16, 2021 (the "***Petition Date***"), electing to proceed under subchapter V of chapter 11. (Dkt. 1). The Debtor continues to manage its financial affairs as debtor in possession under §§ 1181 and 1184 of the Bankruptcy Code.

4.     A more complete description of the Debtor's business and history is set forth in the

1

*Declaration of Candace MacLeod in Support of Debtor's Chapter 11 Petition & First Day Relief* (the "***First Day Declaration***"), filed contemporaneously with this Motion.

## A. The Debtor's Cash Management System

5.      The Debtor operates its business in the ordinary course under an integrated, centralized cash management system (the "***Cash Management System***") comparable to the cash management systems used by similarly situated companies, to manage its cash in a cost-effective, efficient manner.

6.      The Cash Management System is administered by the Debtor to collect funds from various sources to fund operations and pay various operating and administrative expenses. The Debtor uses the Cash Management System in the ordinary course of business to collect, transfer, and distribute funds generated from its operations and to facilitate cash monitoring, forecasting, and reporting.

## B. The Debtor's Existing Bank Accounts & Business Forms

7.      The Debtor maintains four separate commercial bank accounts, held at JP Morgan Chase Bank, N.A. (the "***Bank***," or "***Chase***,") described as follows:

### (a) Operating Account

The Cash Management System centers around the Debtor's account ending in -6529 (the "***Operating Account***"), which it uses as its main operating and disbursement account. The Operating Account is used to take in deposits from the Debtor's various depository accounts, and use those funds to pay the Debtor's operating expenses, using the monies deposited into the Operating Account to make all disbursements to meet the Debtor's ordinary course obligations, including payroll, vendor payments, expense reimbursements, processor fees, and bank fees, among others.

Postpetition, the Debtor anticipates that funds from the DIP Loan sought under the *Debtor's Emergency Motion for Interim and Final Orders Authorizing the Debtor to Incur Postpetition Debt*, filed concurrently with this Motion, will be disbursed to the Operating Account.

### (b) Licensing Account

The Debtor uses a separate account ending in -6537 for purposes of receiving payments from its various licensing partners (the "***Licensing Account***") as part

of the Cash Management System. The Licensing Account is used to track and account for receipts from the Debtor's various licensing partners. Funds held in the Licensing Account are periodically transferred to the Licensing Account to fund the Operating Account. Generally speaking, such transfers are made daily when the Debtor receives funds into the Licensing Account.

### (c) *CPG Account*

The Debtor also uses a separate account ending in -6522 for purposes of receiving payments from customers on account of CPG sales (the "***CPG Account***") as part of the Cash Management System. The CPG Account is used to track and account for sales through the Debtor's consumer package goods customers. Funds held in the CPG Account are periodically transferred to the Operating Account to fund the Operating Account, generally speaking, such transfers are made daily when the Debtor receives funds into the CPG Account.

### (d) *Holding Account*

The Debtor also maintains an account ending in -1879 with the Bank as part of the Cash Management System for the purpose of holding and accounting for funds transferred to the Debtor as capital infusions from equity holders (the "***Holding Account***"). Funds held in the Holding Account (to the extent any are held) are available to the Debtor t in the event that the Debtor does not hold enough funds in the Operating Account to pay its expenses in the ordinary course.

8.      The Debtor also regularly uses company-specific business and banking forms, including checks; letterhead; envelopes; invoices; purchase orders; guest receipts and other common forms in the day-to-day conduct of its affairs (collectively, the "***Business Forms***").

### C.  The Debtor's Need to Maintain the Cash Management System & Facilitate Postpetition Operations

9.      The Cash Management System touches all aspects of the Debtor's business operations, and by its nature, is critical to the integrated management of the Debtor's financial affairs. The overwhelming majority of the Debtor's business transactions are conducted electronically, tied directly to the Bank Accounts. Additionally, the Cash Management System is integrated directly with the Debtor's accounting system to track and receive information regarding the Debtor's business, including tracking and accounting for receipts from specific sources, projecting future revenues and income, and managing employee, vendor, and customer payments and receipts. The Debtor needs to be able to continue operating its business in the

ordinary course under the Cash Management System and should not be forced to disrupt its regular business activities at a time when restarting operations is so critical to the Debtor's ability to reorganize.

10.     Additionally, given the nature of the Debtor's business, any disruption to the Cash Management System would have an immediate adverse effect on its business and operations to the detriment of its estate and numerous stakeholders. Accordingly, to minimize the disruption caused by this Case and to maximize the value of the Debtor's estate, the Debtor requests authority, but not direction, to continue to utilize its existing Cash Management System during the pendency of this Case, subject to the terms described in this Motion.

## RELIEF REQUESTED

11.     By this Motion, the Debtor seeks interim and final orders granting the Debtor authority to, among other things: (1) maintain the Cash Management System as described in this Motion; (2) maintain the Bank Accounts; (3) continue using its existing Business Forms; and (4) modify certain investment & deposit requirements imposed by 11 U.S.C. § 345(b). The Debtor also requests that the Court schedule a final hearing on this Motion within 45 days after entry of an interim order granting the Motion.

12.     Courts in this and other districts have regularly waived certain U.S. Trustee Guidelines and allowed for the implementation of alternative procedures such as those proposed by this Motion. *See, e.g., In re Morgan Administration Inc, et al.*, No. 18-30039 (JPC) (Bankr N.D. Ill. Nov. 21, 2018); *In re Quadrant 4 System Corp.,* No. 17-19689 (JBS) (Bankr. N.D. Ill. July 7, 2017); *In re ITR Concession Co.*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014); *In re Edison Mission Energy,* No. 12-49219 (JPC) (Bankr. N.D. Ill. May 15, 2013); *In re GEI-RP (f/k/a Giordano's Enters., Inc.)*, No. 11-06098 (ERW) (Bankr. N.D. Ill. Feb. 17, 2011).

### A.  The Court Should Authorize the Debtor's Continued Use of the Bank Accounts & Cash Management System

13.     The Debtor seeks authority from this Court to maintain its existing Bank Accounts

and continue using the Cash Management System under Bankruptcy Code §§ 105(a) and 363(c).

14.     Unless otherwise ordered by the Court, the U.S. Trustee, through its *Operating Guidelines for Chapter 11 Cases* (the "**U.S. Trustee Guidelines**"), requires that the Debtor, as debtor in possession: (a) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor in possession accounts; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and the type of account on such checks. *See* U.S. Trustee Guidelines at ¶ 2.

15.     These requirements are designed to provide a clear line of demarcation between prepetition and postpetition transactions and help protect against the inadvertent postpetition payment of prepetition claims. The Debtor submits that—in this Case—modifying certain of these requirements is warranted, as strict enforcement of the U.S. Trustee Guidelines would severely disrupt the ordinary financial operations of the Debtor by reducing efficiencies and causing unnecessary expense.

16.     The Debtor's Bank Accounts are held at a financially stable banking institution. To protect against the unauthorized payment of prepetition obligations, the Debtor represents that, if it is authorized to use the Bank Accounts, it will not pay any debts incurred before the Petition Date other than as authorized by this Court. Moreover, any new account that the Debtor opens will be (a) with a bank that is (i) organized under the laws of the United States or any state therein, (ii) is insured by the FDIC, and (iii) has executed, or is willing to immediately execute, a Uniform Depository Agreement with the U.S. Trustee; (b) be designated a "debtor in possession" account by the relevant Bank; and (c) comply with applicable provisions of any financing order entered in this Case. Additionally, the Debtor will provide the U.S. Trustee and Sub V Trustee with notice before opening any new bank accounts.

17.     Enforcing the U.S. Trustee's requirements without modification would

significantly disrupt the Debtor's business. Indeed, as explained in more detail above, the Bank Accounts are integral components of the Cash Management System that allow the Debtor to centrally manage cash collection and disbursements.

18.     The Debtor's current Cash Management System also enables the Debtor to trace funds and ensure that all transactions are adequately documented and readily ascertainable. The Debtor submits that parties in interest will not be harmed by the Debtor's maintenance of the Cash Management System, including the Bank Accounts, because the Debtor has implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date. Requiring the Debtor to open new bank accounts at this critical juncture would increase operating costs and cause delays that would negatively impact the Debtor's ability to operate its business.

19.     The seamless operation of the Debtor's business will maximize the value of the Debtor's estate, and it should therefore (a) be permitted to continue maintaining the Bank Accounts and open new or close existing accounts as needed; and (b) have the relief sought in this Motion extend to any new accounts, by providing that such accounts are deemed Bank Accounts of the Debtor subject to the provisions of any interim or final order entered by the Court granting this Motion.

20.     Despite the requirements set forth in the U.S. Trustee Guidelines, Bankruptcy Code § 363(c)(1) nevertheless permits the Debtor's continued use of the Bank Accounts and Cash Management System, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

21.     To the extent that using the existing Cash Management System falls outside the ordinary course of business, such use is permitted by Bankruptcy Code §§ 363(b)(1) and 105(a). Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). And § 105(a) further provides that this Court may "issue any order . . . that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id* at § 105(a).

22.    Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp*., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system allows a debtor ""to administer more efficiently and effectively its financial operations and assets." *In re Southmark Corp*., 49 F.3d 1111, 1114 (5th Cir. 1995); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all bank accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061.

23.    Here, requiring the Debtor to adopt a new, segmented cash management system would be expensive, create unnecessary administrative burdens, and be unnecessarily disruptive to the operation of the Debtor's business. The existing Cash Management System, including use of the Bank Accounts, allows the Debtor to efficiently handle receivables, pay vendors, fund payroll, maintain insurance, pay taxing authorities and regulatory entities, and maintain appropriate reserves for taxes and other business-related obligations. A disruption of this system could have a severe and adverse effect on the Debtor's operations and needlessly harm the value of its business enterprise. By contrast, maintaining the current Cash Management System would greatly facilitate the Debtor's transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.

24.    The Debtor submits that parties in interest will not be harmed by maintaining the Cash Management System, including the Bank Accounts, because the Debtor has implemented appropriate mechanisms to ensure that payments will not be made on account of obligations incurred before the Petition Date, other than those authorized by the Court. With the assistance of its professional advisors, the Debtor has implemented internal protocols that prohibit payments on account of prepetition debts. The Debtor will continue to work closely with the Bank

to issue stop payment orders on any checks that were issued prepetition so they will not be honored without the Court's approval. In light of such protective measures, the Debtor submits that maintaining the Cash Management System is in the best interests of its estate and creditors.

25.     The Debtor therefore requests that the Court authorize its continued use of the existing Cash Management System. The Debtor specifically requests that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as bank accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business. The Debtor further requests that the Court authorize and direct the Banks to receive, process, honor, and pay any and all checks, wire transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that the Debtor will issue a stop payment order on any check or draft drawn, issued, or otherwise presented prior to the Petition Date so they will not be honored by the Bank except to the extent authorized by order of the Court.

26.     The Debtor also requests that, to the extent the Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtor or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtor or to its estate on account of such prepetition check or other item honored postpetition. Such relief is reasonable and appropriate because these banks are not in a position to independently verify or audit whether the Debtor may pay a particular item in accordance with a Court order or otherwise.

27.     Finally, the Debtor requests that the Court authorize it to continue to pay the Bank's ordinary course banking fees, and authorize the Bank (including any additional banks at which the Debtor may open new accounts under the terms of an order granting this Motion) to

chargeback returned items to the appropriate Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

**B. The Court Should Authorize the Debtor to Honor Certain Prepetition Obligations Related to the Cash Management System**

28.     In connection with the Cash Management System, the Debtor may incur fees and other charges (collectively, all such fees and charges, the "***Bank Account Claims***") in connection with (a) checks that have been dishonored or returned for insufficient funds in the applicable account, and (b) any reimbursement or other payment obligations, such as overdrafts, arising under any agreements governing the Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements (the "***Bank Account Agreements***"). Although the Debtor does not believe that there were any outstanding Bank Account Claims as of the Petition Date, the Debtor seeks authority under Bankruptcy Code §§ 105(a) and 363(b), to, in its sole discretion: pay or reimburse as necessary, the Banks in the ordinary course of business for any Bank Account Claims arising prior to, on, or after the Petition Date.

29.     The Debtor also requests that, to the extent the Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion either (a) at the direction of the Debtor; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item honored postpetition. As part of this Motion, the Debtor is requesting authority, but not direction, to pay certain prepetition obligations.

30.     With respect to some of these obligations, the Debtor may have issued checks prior to the Petition Date that have yet to clear the banking system. In other instances, the Debtor may issue the relevant check once the Court enters an order permitting the Debtor to do so.

31.     The Debtor intends to issue stop payment orders on such checks that should not

be honored. Therefore, the Debtor requests that the Banks be authorized to rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored. The Debtor submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

### C. The Court Should Authorize the Debtor to Continue Using its Existing Business Forms

32.     To avoid disruption of the Debtor's Cash Management System and unnecessary expenses to the estate, the Debtor also seeks authority to continue using its existing Business Forms, which do not include checks, substantially in the form existing immediately before the Petition Date, without reference to its status as debtor in possession. Moreover, the Debtor submits that the continued use of its current Business Forms will not prejudice parties in interest because parties doing business with the Debtor will undoubtedly know of the Debtor's status as a debtor-in-possession. Thus, modifying the Debtor's existing Business Forms is unnecessary and would be unduly burdensome to the Debtor.

### D. The Court Should Authorize the Debtor to Continue Using Debit & Wire Transfers

33.     The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines requirement that all disbursements of estate funds be done by check and include a notation representing the reason for the disbursement. Considering the nature of the Debtor's operations, the Debtor needs to conduct transactions by debit or wire transfers and other similar electronic methods. If the Debtor is denied the opportunity to conduct transactions by debit, wire transfers, or other such methods used in the ordinary course of business, the Debtor's business operations would be disrupted unnecessarily, burdening the Debtor and its creditors with additional expenses. Thus, the Debtor requests authority from this Court to continue using debit, wire transfers, or other electronic methods in the ordinary course of its business to avoid

disruption of the Debtor's Cash Management System.

### E.  Cause Exists to Modify § 345(b)'s Deposit Requirements

34.      Bankruptcy Code § 345 governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code § 345(b) requires the estate to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the Court "for cause" orders otherwise. 11 U.S.C. § 345(b).

35.      In evaluating whether "cause" for modification or waiver of these requirements exists, courts have considered a number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver or modification of the § 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver or modification under the circumstances. *See In re Serv. Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Here, these factors warrant a modification of the requirements of Bankruptcy Code § 345 to the extent the Cash Management System does not already strictly comply with its requirements.

36.      As discussed above, the Bank Accounts are maintained at Chase. Chase is an authorized depository under the U.S. Trustee Guidelines, and the Bank Accounts are insured by the FDIC. Therefore, the Bank Accounts comply with Bankruptcy Code § 345(b). Out of an abundance of caution, however, to the extent that any Bank Accounts do not strictly comply with Bankruptcy Code § 345, the Debtor submits that cause exists to suspend any such noncompliance

on an interim basis as set forth in this Motion, given that all funds are deposited safely and prudently at financially-stable banking institutions.

### BANKRUPTCY RULE 6003 IS SATISFIED

37.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed in the First Day Declaration and above, (a) authorizing the Debtor to (i) continue using its existing Cash Management System, Bank Accounts, and Business Forms, and (ii) honor prepetition obligations related to the use thereof; and (c) waiving deposit requirements of Bankruptcy Code § 345 is integral to the Debtor's ability to transition its operations into this Case.

38.     Failure to receive such authorization and other relief during the first 21 days of this Case would disrupt the Debtor's ability to operate at this critical juncture. Thus, the relief requested here is necessary for the Debtor to operate its business in the ordinary course, preserve the ongoing value of the Debtor's operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

### WAIVER OF BANKRUPTCY RULES 6004(a) & (h)

39.     To implement the relief sought here successfully, the Debtor also requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

40.     Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity of any claim against the Debtor or the existence of any lien against the Debtor's property; (b) a waiver of the Debtor's rights to dispute any claim or lien on any grounds; (c) a

promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease under Bankruptcy Code § 365; or (f) a limitation on the Debtor's rights under Bankruptcy Code § 365 to assume or reject any executory contract or unexpired lease with any party, subject to the provisions of any orders entered by this Court granting the relief requested by this Motion. Nothing contained in the proposed orders attached to this Motion shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

### NOTICE & NO PRIOR REQUEST

41.     The Debtor is providing notice of this emergency Motion to the following parties or their respective counsel: (a) the United States Trustee for the Northern District of Illinois; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) the Bank; (d) counsel to 550 St. Clair Retail Associates, LLC; and (e) counsel to Novack & Macey LLP by email, telephone, and/or overnight delivery. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given. The Debtor will provide such additional notice as may be required and appropriate in advance of the final hearing on this matter.

42.     No prior request for the relief sought in this Motion has been made to this or any other court.

### CONCLUSION

*Wherefore*, the Debtor requests that the Court enter interim and final orders, substantially in the same form attached to this Motion: (a) granting the relief requested in this Motion; and (b) any other further relief the Court deems appropriate under the circumstances.

Date: October 27, 2021                 *Golden Fleece Beverages, Inc.*

                                      By:   /s/ Jonathan Friedland
                                           One of its Attorneys

                                      Jonathan Friedland (IL No. 6257902)
                                      Jack O'Connor (IL No. 6302674)
                                      Mark Melickian (IL No. 6229843)
                                      **Sugar Felsenthal Grais & Helsinger LLP**
                                      30 N. LaSalle St., Ste. 3000
                                      Chicago, Illinois 60602
                                      Telephone:  312.704.9400
                                      Facsimile:   312.704.9400
                                      jfriedland@sfgh.com
                                      joconnor@sfgh.com
                                      mmelickian@sfgh.com

                                      *Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**INTERIM ORDER AUTHORIZING DEBTOR TO (1) MAINTAIN EXISTING BANK ACCOUNTS; (2) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM; (3) CONTINUE USING EXISTING BUSINESS FORMS; (4) MODIFY INVESTMENT & DEPOSIT REQUIREMENTS UNDER 11 U.S.C. § 345(b); & (5) RELATED RELIEF**

This matter came before the Court on the Debtor's motion (the "***Motion***") for the entry of interim and final orders authorizing the Debtor to (1) maintain its existing Bank Accounts;[1] (2) continue using its existing Cash Management System; (3) continue using its existing Business Forms; (4) modifying certain investment & deposit requirements; and (5) related relief; all as more fully set forth in the Motion the MacLeod Declaration; t and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate; and the Court having found that the Debtor provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing on the Motion establish just cause for the relief granted in this Order; and after due deliberation and sufficient cause appearing therefor,

**It is Hereby Ordered:**

1.      The Motion is granted as set forth in this Order (the "***Interim Order***").

2.      The final hearing (the "***Final Hearing***") on the Motion will be held on _____, 2021 at __:__ _.m. prevailing Central Time. Any objections or responses to entry of a final order on the Motion must be filed no later than 4:00 p.m. Central Time on _____, 2021 (the "***Objection Deadline***"), and must be served on the following parties or their respective counsel no later than the Objection Deadline: (a) proposed counsel to the Debtor, Sugar Felsenthal Grais & Helsinger LLP, 30 N. LaSalle St., Ste. 3000, Chicago, IL 60602 (Attn: Jonathan Friedland (jfriedland@sfgh.com) and Jack O'Connor (joconnor@sfgh.com)); (b) the office of the United States Trustee for the Northern District of Illinois (the "***U.S. Trustee***"), 219 S. Dearborn St., Room 873, Chicago, IL 60604 (Attn: Jeffrey Gansberg (jeffrey.l.gansberg@usdoj.gov)); (c) the Subchapter V Trustee appointed in this case, _____, c/o _____, _____, _____, IL _____ (_____@_____.com). If no objections or responses are filed and served by the Objection Deadline, the Court may enter a final order without further notice or hearing.

3.      The Debtor is authorized, but not directed, to maintain and use the Cash

---

[1]    Capitalized terms not defined in this Order bear the meanings given to them in the Motion.

Management System as described in the Motion.

4.      The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; provided that the Debtor give at least 5 business days' prior notice to the U.S. Trustee; provided, further, that the Debtor may only open any new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement (each such bank referred to collectively with the Bank as the "***Banks***").

5.      The Debtor is authorized, but not directed, to continue to use, in their present form, all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices), as well as checks (with no break in check sequences) and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtor's status as a debtor in possession.

6.      The relief granted in this Interim Order is extended to any new bank account opened by the Debtor after the date of this Order, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

7.      The U.S. Trustee Guidelines are hereby excused, such that the Debtor is not required to: (a) close all existing Bank Accounts and open new debtor in possession accounts or (b) establish specific bank accounts for tax payments.

8.      The Bank Accounts are deemed debtor in possession accounts. The Debtor is authorized, but not directed, to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as those employed before the Petition Date, including, without limitation: (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, drafts, electronic fund transfers, and other debits or items presented, issued, or drawn on the Bank Accounts; (b) to pay ordinary course Bank Fees in connection with the Bank Accounts, including any Bank Fees arising prior to the Petition Date in an amount not to exceed $1,000; and (c) to perform their obligations under the documents and agreements governing the Bank Accounts, including without limitation, any prepetition Cash Management agreements or treasury services agreements, in each case subject to the limitations of each applicable deposit account control agreement.

9.      Those certain existing deposit agreements between the Debtor and the Bank shall continue to govern the postpetition Cash Management relationship between the Debtor and the Bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

10.      The Banks are authorized without the need for further order of this Court to in the ordinary course of business: (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, payment orders, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "***Disbursements***") on account of a

claim; and (c) debit the Bank Accounts for: (i) all undisputed prepetition bank and service fees outstanding as of the date of this Order, if any, owed to the Banks for the maintenance of the Cash Management System; (ii) all checks drawn on the Debtor's Bank Accounts which were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof before the Petition Date; and (iii) all checks or other items deposited in one of the Debtor's Bank Accounts with such Bank before the Petition Date, which have not been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date.

11.     Subject to the provisions of this Interim Order, the Banks are authorized to and shall rely on the representations of the Debtor as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated, drawn, or issued prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court. The Banks shall not be deemed in violation of this Interim Order and shall have no liability for relying on such representations by the Debtor or honoring any Disbursement that is subject to this Interim Order either (a) at the direction of the Debtor to honor such prepetition Disbursement; (b) in the good faith belief that this Court has authorized such prepetition Disbursement to be honored; or (c) as a result of an innocent mistake. To the extent that the Debtor directs that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtor may issue replacement Disbursements consistent with the orders of this Court.

12.     The Banks are further authorized to (a) honor the Debtor's directions with respect to the opening or closing of any Bank Account; and (b) accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions, and the Banks shall have no liability to any party for relying on such representations or instructions.

13.     To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to this Order.

14.     The Debtor shall serve a copy of this Interim Order on the Bank within five (5) business days of its entry, and upon any bank at which the Debtor opens a new bank account, immediately upon the opening of such new account.

15.     Nothing in this Interim Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to § 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor; (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtor or its estate with respect to the validity, priority, or amount of any claim against the Debtor and its estate; or (c) shall be construed as a promise to pay a claim.

16.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon its entry.

17.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

18.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Enter:

Date: _____, 2021

_____

Honorable David D. Cleary
United States Bankruptcy Judge

Prepared by:

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**Sugar Felsenthal Grais & Helsinger LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*

4

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) PAY PREPETITION EMPLOYEE OBLIGATIONS; (2) CONTINUE ADMINISTERING EMPLOYEE BENEFITS PLANS; & (3) DIRECT ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS**

Golden Fleece Beverages, Inc., the debtor and debtor in possession (the "***Debtor***") in the above-captioned Chapter 11 case (the "***Case***") through counsel, submits this emergency motion seeking interim and final orders, substantially in the form attached to this Motion, under 11 U.S.C. §§ 363(b), 507(a), and 541 authorizing, but not requiring, the Debtor to: (1) satisfy all prepetition Employee Obligations; (2) continue administering Employee Benefits plans; and (3) direct all banks to honor prepetition checks or wire transfers with respect to payments authorized by this emergency motion (the "***Motion***"). In support of this Motion, the Debtor states:

**JURISDICTION & VENUE**

1.      The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this Case and the Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested by this Motion are §§ 363(b), 507(a), and 541 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

**BACKGROUND & THE DEBTOR'S EMPLOYEE WAGE & BENEFITS PRACTICES**

3.      On October 27, 2021 (the "***Petition Date***"), the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to manage its financial affairs as debtor-in-possession. A more complete description of the Debtor's operations and history is set forth in the *Declaration of Candace MacLeod in Support of Debtor's*

*Chapter 11 Petition & First Day Relief* (the "**First Day Declaration**") filed contemporaneously with this Motion.

4.      The Debtor has a workforce consisting of six full time salaried and exempt employees (the "**Employees**").

5.      As of the Petition Date, the Debtor estimates the aggregate amount of accrued, unpaid salary, and wages to Employees are approximately $19,811.38, exclusive of commissions not yet due and payable to certain Employees, as described in greater detail in paragraph 10 below (the "**Unpaid Compensation**"). The Debtor seeks authority to pay its Employees their Unpaid Compensation and honor certain other non-cash obligations. The Debtor will not pay Unpaid Compensation to any individual Employee exceeding the $13,650 cap imposed by § 507(a)(4) of the Bankruptcy Code.

### A.  Employee Payroll

6.      In the ordinary course of business, the Debtor incurs payroll obligations for its Employees. Such obligations generally consist of wages, commissions, and salaries ("**Employee Compensation**"). The Debtor's employees are paid salaries, commissions, and wages on a bi-weekly basis. Wednesday is payday for all employees, with payment being made two weeks in arrears. On average, the total amount of bi-weekly Employee Compensation is approximately $24,000.

7.      Employee Compensation is funded through ZenPayroll, Inc., dba Gusto ("**Gusto**"), a payroll service. To pay the Employee Compensation, the Debtor transmits payroll records to Gusto on the Mondays for payday later in the week. On those Mondays, Gusto debits the Debtor's bank accounts the amount referenced on the payroll records. On the regular payday, Gusto disburses the Employee Compensation to each Employee from the funds advanced by the Debtor, paying the Employee in arrears for the past two weeks' work.

8.      The Debtor transmitted funds to Gusto to pay Employee Compensation to the Employees through October 15, 2021, and Gusto disbursed these funds to the Employees. Gusto

has not yet been funded to pay Employee Compensation for services rendered through October 31, 2021. Gusto is not holding any additional funds from the Debtor for Employee Compensation as of the Petition Date.

9.      The Employees have not been paid outstanding Employee Compensation for the pay period beginning October 16, 2021, through the Petition Date.

10.     Additionally, certain of the Debtor's employees are entitled to commission on account of CPG sales. Two of the Employees receive sales commissions based on sales of the Debtor's CPG products. Commissions are paid to these Employees upon the Debtor receiving payment from a customer on account of the relevant Employee's sales. Both Employees receive commission payments from all customer sales. Commission percentages are increased once the business reaches specific sales, and there is no cap on commission amount. As of the Petition Date, the total estimated commissions owed to Employees on account of prepetition sales— inclusive of sales relating to the Walgreens Receivable and the Kwik Trip Receivable—is approximately $21,481.57 that will become due and payable to the Employees following the Debtor's collection of roughly $859,000 in accounts receivable relating to these sales.

### B. Employment & Withholding Taxes

11.     The Debtor routinely withholds from its Employees' payroll amounts they are required to remit to various federal, state, and local taxing authorities and other governmental agencies (the "***Employee Deductions***", referred to collectively with Employee Compensation as the "***Employee Obligations***"). Examples of Employee Deductions include: Social Security Taxes; federal, state, and local income taxes; wage garnishments; and other court-ordered deductions. These taxes and other deduction obligations are usually calculated based on statutorily-mandated percentages of earned wages. The Debtor has historically paid all Employee Deductions, and by this motion, the Debtor seeks authority to continue doing so, and forward any outstanding prepetition Employee Deductions to the appropriate parties.

### C. Employee Benefits & Expense Reimbursements

12.      The Debtor offers its Employees certain benefits, including health insurance, dental and vision insurance, a 401(k), life insurance, disability insurance, accident insurance, flexible benefits, and paid time off (collectively, the "***Employee Benefits***"). The Debtor seeks to continue providing the Employee Benefits postpetition, and to honor all prepetition obligations related to the Employee Benefits.

13.      The Debtor also regularly reimburses Employees, as well as one non-Employee, Roy Yu (the Debtor's Operating Partner, who is also a small indirect shareholder of the Debtor) for business expenses advanced on the Debtor's behalf by these individuals (the "***Expenses***"). Categories of Expenses that the Debtor reimburses for include but are not limited to customary travel, lodging, and meal expenses.

14.      In addition, the Debtor reimburses Expenses for certain business expenses that these individuals advance from their personal credit cards on the Debtor's behalf, as a matter of expediency because the Debtor itself does not currently have a corporate credit card account, and in many cases no other method of payment is accepted by third parties on the timeframe needed by the Debtor. Such Expenses include advances made by individuals to pay for certain software platform subscriptions the Debtor uses to manage its business; freight charges for shipping through third parties; and overnight mailing services. Generally speaking, individual credit cards are only used for these Expenses when no other method is accepted in the necessary timeframe. The Debtor is working to migrate these expenses to its own accounts as it continues operations.

15.      Individuals seeking reimbursement for Expenses from the Debtor do so on a monthly basis by submitting reimbursement requests through Expensify, the Debtor's expense reimbursement tracking software platform.

16.      The Debtor has historically reimbursed the Employees and Mr. Yu for all Expenses in the ordinary course of its business, and by this motion, the Debtor seeks authority to continue doing so, and to reimburse Expenses sought by Employees, and only those prepetition Expenses

sought by Mr. Yu. The total amount of Expenses incurred prepetition is approximately $20,000 and, if this aspect of this Motion is approved, six people will be reimbursed.

### D.  Bank Accounts

17.     Finally, the Debtor requests that the Court authorize and direct all banks to receive, process, honor, and pay any checks or electronic transfers drawn on the Debtor's payroll and general accounts related to the Employee Obligations, Employee Benefits, and Expenses (together, the "***Prepetition Employee Obligations***"), whether presented before or after the Petition Date, upon receipt by each bank and institution of notice of such authorization, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtor further requests entry of interim and final orders prohibiting the Debtor's banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations. The Debtor also seeks an order authorizing it to issue new postpetition checks or effect new postpetition fund transfers on account of the prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

**RELIEF REQUESTED**

18.     By this Motion, the Debtor seeks to pay the Prepetition Employee Obligationsto , or for the benefit of, its Employees, and to continue providing Employee Benefits which were in effect prepetition. The Debtor submits that continuing to honor its Employee Compensation and Employee Benefits obligations is imperative to ensure the uninterrupted operation of its business; prevent undue harm to the Employees; and maximize the value of its bankruptcy estate.

19.     In accordance with Bankruptcy Code §§ 363(c) and 1184, and as detailed here, the Debtor may honor Employee Payroll and Benefits, postpetition, in the ordinary course of business. And even if honoring the Employee Compensation and Employee Benefits obligations falls outside the ordinary course of business, honoring these obligations is a sound exercise of the Debtor's business judgment under § 363(b) of the Bankruptcy Code. Certain Employee

Compensation and Benefits are also entitled to priority treatment under §§ 507(a)(4) and (5) of the Bankruptcy Code, which the Debtor must maintain under applicable state and federal law.

20.     Honoring the Employee Compensation and Benefits does not violate § 503 of the Bankruptcy Code.

21.     For all of these reasons, discussed in detail below, this Motion should be granted.

### A.   The Debtor Can Honor Employee Compensation & Benefits Obligations in the Ordinary Course of Business

22.     Compensating employees in the ordinary course of business is critical to the Debtor's chapter 11 strategy, and the Debtor asserts that it has authority under the Bankruptcy Code to continue doing so postpetition. Section 363(c)(1) provides that, so long as "the business of the Debtor is authorized to be operated under [§ 1184 of the Bankruptcy Code] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1). And under § 1184, as a debtor in possession, the Debtor may operate its business unless a court orders otherwise. 11 U.S.C. § 1184. Accordingly, the Debtor asserts that sufficient cause exists to allow it to continue honoring Employee Compensation and Benefits in the ordinary course of business.

### B.   Paying Employee Compensation & Benefits Is a Sound Exercise of the Debtor's Business Judgment, & in the Best Interest of its Estate

23.     Even if the Court finds that honoring the Employee Compensation and Employee Benefits obligations falls outside the ordinary course of business, honoring these obligations is a sound exercise of the Debtor's business judgment, and the Court should authorize the Debtor to continue honoring these obligations postpetition.

24.     Consistent with the Debtor's fiduciary duties as a debtor in possession, courts have authorized payment of prepetition obligations under Bankruptcy Code § 363(b) where a sound business purpose exists for doing so. *See Fulton State Bank v. Schipper (In re Schipper)*, 933

F.2d 513, 515 (7th Cir. 1991) (noting that a Debtor may sell property outside the ordinary course of business if it can provide "articulated business justification") (internal citations omitted); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (allowing contractor to pay prepetition claims of potential lien claimant-suppliers because payments were necessary for general contractors to release funds owed to Debtor). Specifically, once a Debtor articulates a valid business justification for a particular form of relief, the court reviews the Debtor's request under the business judgment rule. *See In re Commercial Mortg. and Fin. Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting discretionary authority to exercise business judgment in operating a Debtor's business "similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation.").

25.     The business judgment rule is a presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. *See In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003). Consequently, a debtor's business decision "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, whim, or caprice.'" *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (quoting *In re Logical Software, Inc.*, 66 B.R. 683, 686 (Bankr. D. Mass. 1986).

26.     The Debtor's retention of its Employees is also critical to its continued operations. The Debtor submits that the Court has the authority, under § 105(a) of the Bankruptcy Code, to exercise its general equitable powers to issue such orders necessary to carry out the provisions of the Bankruptcy Code, which courts have applied implement the priority provisions of §§ 363(b)(1) and 507(a) of the Bankruptcy Code in many instances. The Debtor seeks to treat each of the Employees equally, and seeks authority to pay prepetition obligations, nearly all of which are entitled to priority treatment under the Bankruptcy Code. Paying these priority claims will also

not affect the Debtor's unsecured creditors or the Debtor's bankruptcy estate, because these payments will either be made from collateral subject to security interests that would otherwise be unavailable to pay unsecured claims, or from proceeds available after satisfaction of such security interests from which such priority claims would be paid ahead of general unsecured creditors. The Debtor therefore submits that appropriate circumstances exist to grant this Motion.

27.     Further, the Debtor's proposal to pay employee contribution components of the employer taxes, 401(k) Plan contributions, or payment of garnished wages will not prejudice the Debtor's estate because these withholdings are held in trust for the benefit of the related payees and therefore do not constitute property of the Debtor's estate under § 541 of the Bankruptcy Code. *See Begier v. IRS*, 496 U.S. 53 (1990). Moreover, payments which are critical to the retention and morale of the Debtor's workforce actually add value to the estate because an unplanned reduction in Employee retention or productivity could have disastrous effects on recoveries to unsecured creditors.

28.     The Debtor submits that paying the Employee Obligations and Employee Benefits will maximize the value of its business, and minimize the operational disruptions caused by the Debtor's bankruptcy. The Employees' continued service and dedication are critical to the Debtor's prospects in this chapter 11 case.

29.     The Debtor further submits that the relief sought by this Motion is the type of relief routinely recognized by this Court, and that paying employee obligations is essential to a Debtor's ability to operate in chapter 11. In recognition of the importance of the essential aspects of employee obligations, this Court routinely authorizes payment of prepetition wages, salaries, bonuses and commissions in numerous cases. *See, e.g., In re Quadrant 4 System Corporation., Case No. 17-19689 (JBS) (Bankr. N.D. Ill. July 7, 2017); In re LB Steel LLC*, Case No 15-35358 (JSB) (Bankr. N.D. Ill. Oct. 19, 2015); *In re Caesars Entertainment Co., Inc., et al.*, Case No. 15-01145(ABG) (Bankr. N.D. Ill. Jan. 1, 2015); *In re Giordano's Enters., Inc.*, Case No. 11-06098 (ERW) (Bankr. N.D. Ill. Feb. 17, 2011); *In re Gas City, Ltd.*, Case No. 10-47879 (ERW) (Bankr.

N.D. Ill. Oct. 27, 2010); *In re Hartmarx Corp.*, Case No. 09-02046 (BWB) (Bankr. N.D. Ill. Jan. 26, 2009); *In re Kimball Hill, Inc.*, Case No. 08-10095 (SPS) (Bankr. N.D. Ill. Apr. 25, 2008).

30.    Even though the Debtor seeks authority to pay the Employee Obligations and Employee Benefits, and continue providing the prepetition Employee Benefits, such action, if authorized, should not be deemed an assumption or adoption of any agreement or policy providing such coverage. The Debtor retains its rights to assume, reject, or modify any Employee wage, incentive, or benefits programs to the extent it is entitled to do so under existing contracts, agreements or applicable law.

### C.  Bank Accounts

31.    The Debtor also requests the entry of interim and final orders authorizing and directing all banks to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtor's accounts related to the Prepetition Employee Obligations, whether presented before or after the Petition Date, upon receipt by each bank and institution of notice of such authorization, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtor further requests entry of interim and final orders prohibiting the Debtor's banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an employee or other party for the Prepetition Employee Obligations. The Debtor also requests that the Court grant it authority to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations, to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

COMPLIANCE WITH BANKRUPTCY RULE 6003

32.    Bankruptcy Rule 6003 empowers the Court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed in this Motion, authorizing the Debtor to continue honoring the Employee Obligations and Benefits is essential for its continued operations in this Cas, and if the relief sought in this Motion is not granted during the first 21 days of this Case, the Debtor's

operations will be significantly disrupted, causing irreparable harm to the Debtor. The relief requested is necessary in order for the Debtor to operate its business in the ordinary course, preserve the ongoing value of its operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

**NOTICE & NO PRIOR REQUEST**

33.     The Debtor is providing notice of this emergency Motion to the following parties or their respective counsel: (a) the United States Trustee for the Northern District of Illinois; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) counsel to 550 St. Clair Retail Associates, LLC; and (e) counsel to Novack & Macey LLP by email, telephone, and/or overnight delivery. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given. The Debtor will provide such additional notice as may be required and appropriate in advance of the final hearing on this matter.

34.     No prior request for the relief sought in this Motion has been made to this or any other court.

**CONCLUSION**

*Wherefore*, the Debtor requests that the Court enter of interim and final orders, substantially in the same form attached to this Motion, authorizing, but not requiring, the Debtor to: (1) pay all prepetition Employee Obligations; (2) continue administering the Employee Benefits plans; (3) direct all banks to honor prepetition checks or wire transfers with respect to payments authorized by this Motion; and (4) grant any other, further relief the Court deems appropriate under the circumstances.

Date: October 27, 2021

*Golden Fleece Beverages, Inc.*

By:  _/s/ Jonathan Friedland_____
      One of its Attorneys

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**Sugar Felsenthal Grais & Helsinger LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*

11

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case Number:  21-12228 |
| Golden Fleece Beverages, Inc., | ) | |
| | ) | |
| | ) | Chapter:  11 |
| | ) | Honorable David D. Cleary |
| | ) | |
| Debtor(s) | ) | |

**Interim Order Authorizing Debtor to: (1) Satisfy all Prepetition Employee Obligations; (b) Continue Administering Employee Benefits Plans; & (c) Direct all Banks to Honor Prepetition Checks or Wire Transfers with Respect to Payment of Prepetition Employee Obligations**

This matter came before the Court on the motion (the "Motion") of the debtor in the above-captioned chapter 11 case (the "Case") for interim and final orders under 11 U.S.C. §§ 363(b), 507(a), and 541 authorizing the Debtor to pay prepetition employee wage, health insurance, and other related obligations; any capitalized terms not otherwise defined in this Order bear the meaning given to them in the Motion.

The Court, finding that (a) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. § 1334; (b) this is a core proceeding under 28 U.S.C. § 157(b)(2); (c) notice of the Motion and the hearing on the Motion was sufficient under the circumstances; (d) the relief requested in the Motion is in the best interests of the Debtor, its bankruptcy estate, creditors, and other parties in interest; and (e) after due deliberation of the record before this Court; good and sufficient cause exists to grant the relief set forth in this order;

It is Hereby Ordered:

1. The Motion is granted on an interim basis as set forth in this Order.

2. The final hearing (the "Final Hearing") on the Motion will be held on _____, 2021 at __:__ _. m. prevailing Central Time. Any objections or responses to entry of a final order on the Motion must be filed no later than 4:00 p.m. Central Time on _____, 2021 (the "Objection Deadline"), and must be served on the following parties or their respective counsel no later than the Objection Deadline: (a) proposed counsel to the Debtor, Sugar Felsenthal Grais & Helsinger LLP, 30 N. LaSalle St., Ste. 3000, Chicago, IL 60602 (Attn: Jonathan Friedland (jfriedland@sfgh.com) and Jack O'Connor (joconnor@sfgh.com)); (b) the office of the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), 219 S. Dearborn St., Room 873, Chicago, IL 60604 (Attn: Jeffrey Gansberg (jeffrey.l.gansberg@usdoj.gov)); (c) the Subchapter V Trustee appointed in this case, _____, c/o _____, _____, _____, IL _____ (_____@_____.com). If no objections or responses are filed and served by the Objection Deadline, the Court may enter a final order without further notice or hearing.

3. The Debtor is authorized, but not directed, on an interim basis to pay all prepetition Employee Obligations; provided, however, that payments of wages, salary and vacation benefits to each Employee after the Petition Date on account of amounts accrued prior to the Petition Date shall not exceed amounts afforded priority status by section 507(a)(4) of the Bankruptcy Code.

Form G3 (20200113_bko)

4. The relief granted herein shall not constitute or be deemed an assumption or an authorization to assume any executory contract or agreement, including but not limited to any benefit plans or employment agreements, to which the Debtors are a party.

5. Due to the immediate and irreparable harm that would occur if the Motion were not granted, the requirements set forth in Bankruptcy Rule 6003(b) are satisfied with respect to the relief granted herein.

6. Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon its entry.

7. The Debtor is authorized to take all steps necessary to carry out this order.

8. All applicable financial institutions are authorized and directed to process, honor, and pay any and all checks or wire transfer requests, as may be requested by the Debtor to effectuate payment of the Prepetition Employee Obligations.

9. Notwithstanding anything to the contrary contained herein, any payment made or to be made under this order, any authorization contained in this order, or any claim for which payment is authorized hereunder, shall be subject to the requirements imposed on the Debtor under any orders of this Court approving any debtor in possession financing for, or any use of cash collateral by, the Debtor and any budget in connection therewith.

10. Nothing in this order should be construed as approving any transfer pursuant to 11 U.S.C. § 503 (c), and a separate motion will be filed for any request that could fall with Section 503(c).

Enter:


Honorable David D. Cleary
United States Bankruptcy Judge

Dated:

**Prepared by:**

Sugar Felsenthal Grais & Helsinger LLP
Jonathan P. Friedland, Esq. (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark S. Melickian, Esq.  (IL No. 6229843)
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400
Facsimile: 312.372.7951
jfriedland@SFGH.com
joconnor@SFGH.com
mmelickian@SFGH.com

Proposed Counsel to the Debtor