UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

## NOTICE OF EMERGENCY MOTION

*Please take notice* that on **Monday, November 1, 2021, at 9:00 a.m. C.T.** the undersigned will appear before the Honorable David D. Cleary, or any judge sitting in his place, and present the motion *Debtor's Emergency Motion for Interim & Final Orders Authorizing the Debtor to Incur Postpetition Debt*, a copy of which is attached here.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard at the hearing, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1.669.254.5252 or 1.646.828.7666. then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is **161 122 6457** and the password is **Cleary644**.The Meeting ID and passcode can also be found on Judge Cleary's webpage on the court's website, https://www.ilnb.uscourts.gov/content/judge-david-d-cleary.

**If you object to this motion,** such objections may be made at the hearing, including any opposition on the basis that emergency treatment is not appropriate.

Date: October 27, 2021

*Golden Fleece Beverages, Inc.*

By:  /s/ Jonathan Friedland
       One of its Attorneys

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*

1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM & FINAL ORDERS AUTHORIZING THE DEBTOR TO INCUR POSTPETITION DEBT**

Golden Fleece Beverages, Inc., the debtor and debtor in possession (the "***Debtor***") in the above-captioned Chapter 11 case (the "***Case***") submits this emergency motion (the "***Motion***") seeking interim and final orders, substantially in the form attached hereto as Exhibits 1 and 2, authorizing the Debtor incur postpetition debt (the "***DIP Loan***") through a Debtor in Possession Loan Agreement (the "***DIP Agreement***") to be provided by several lenders (the "***Lenders***") as described herein. In support of the Motion, the Debtor states:

**JURISDICTION & VENUE**

1. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this Case and the Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 364(c) and (d), 1182 and 1184; Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"); and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "***Local Rules***").

**RELIEF REQUESTED**

3. By this Motion, the Debtor seeks interim and final orders (a) granting the Debtor authority to obtain the DIP Loan from the Lenders pursuant to §§ 362, 364(c)(1), (2), and (3), and 364(d) of the Bankruptcy Code, Rule 4001 of the Federal Bankruptcy Rules of Procedure (the "***Bankruptcy Rules***"), and Rule 4001-2 of the Local Bankruptcy Rules for the Northern District of Illinois (the "***Local Rules***"); (b) vacating or modifying the automatic stay imposed by § 362 of

1

the Bankruptcy Code to the extent necessary to implement and effectuate the terms provided herein; and (c) granting related relief.

4. The Debtor also requests that the Court schedule a final hearing on this Motion within 45 days after entry of an interim order granting the Motion.

## BACKGROUND

5. The Debtor filed this Case on October 27, 2021 (the "**Petition Date**"). (Dkt. 1). The Debtor continues to manage its financial affairs as debtor in possession under §§ 1182 and 1184 of the Bankruptcy Code.

6. Following is a brief description of the Debtor's business operations and debt structure. A more complete description of the Debtor's business and history is set forth in the *Declaration of Candace MacLeod in Support of Debtor's Chapter 11 Petition & First Day Relief* (the "**First Day Declaration**") filed contemporaneously with this Motion.

### A. The Debtor's Business

7. The Debtor has two business lines: selling consumer packaged goods to retailers ("**CPG**") and working with licensee-partners who operate cafés ("**Licensing**").

8. The Debtor purchased assets used in its business in February 2020 out of a UCC Article 9 sale of the assets of Argo Tea, Inc. ("**Argo**"). Following the purchase, the Debtor proceeded to use the assets it acquired to invest in growing the new business. Using capital remaining from its initial raise, GFB has built out operations, produce inventory, develop new formulas for its beverages, develop a new brand image, and market to customers.

9. The overall business strategy focused on CPG, with a secondary focus on Licensing, while exiting the direct ownership and operation of cafés.

10. As of the Petition Date, the Debtor has six employees and contracts out all manufacturing.

11. The CPG side of the Debtor's business produces about 93% of its revenue, over 80% of which is earned by selling its products to Walgreens and Kwik Trip.

### B. The Debtor's Debt Structure

12.     As of the Petition Date, the Debtor's debts include approximately $1.56 million in noncontingent, liquidated unsecured debts owed to general unsecured creditors. The Debtor does not have any secured creditors.

13.     The Debtor does business its trade vendors under the terms of various agreements, particularly with those of its key trade vendors supplying certain proprietary or specialized goods or services for the Debtor. For example, the bottles, labels, and formulas for the Debtor's bottled tea products sold through CPG channels are produced by various vendors, making up the Debtor's ultimate finished CPG products. The Debtor also has executory contract relationships with certain of its other vendors to maintain and operate its business in the ordinary course.

### REASONS FOR REQUESTED RELIEF

### A. Need for Debtor in Possession Financing

14.     As described above, the Debtor purchased its operating assets from Argo at an Article 9 sale in February 2020. Following the closing of the Article 9 sale, two Argo creditors elected to pursue collection litigation against Argo. Eventually, one of them, 550 St. Clair Retail Associates, LLC ("**550 St. Clair**") managed to obtain state court orders in May and July of 2021 freezing funds payable to the Debtor by two of the Debtor's customers even though the Debtor was not a defendant in the collection proceeding.

15.     Coupled with the disruption in business caused by the pandemic, the disruption of 550 St. Clair's actions to the Debtor's cash flow and business operations has been severe, and led directly to the filing of this bankruptcy and to the need for debtor in possession financing during the case.

### PROVISIONS TO BE HIGHLIGHTED PURSUANT TO LOCAL RULE 4001-2(A)(2)

16.     Local Rule 4001-2(A)(2) requires of a debtor requesting authority to use cash collateral or obtain postpetition financing to: (a) recite whether the proposed form of order or loan agreement contains certain provision of the type enumerated within the Rule; (b) identify

3

the location of any such provision in the proposed order or loan agreement; and (c) state the justification for the inclusion of such provision (the "*Highlighted Provisions*"). The DIP Agreement is appended as **Exhibit A** to the proposed Interim Order. The below chart summarizes and provides a justification for the Interim Order's inclusion or approval of certain Highlighted Provisions.

| Material Terms | Summary of Material Terms[1] | Interim Order or DIP Agreement Provision |
|---|---|---|
| **Borrower**: | Golden Fleece Beverages, Inc. | Ex. A, page 1 |
| **Guarantors**: | n/a | n/a |
| **Lenders**: | G & K Investment Holdings, Vicinet, LLC, and GTeaVentures, LLC | Ex. A, page 1 |
| **Agent**: | Gerald Muizelaar, administrative agent on behalf of the Lenders | Ex. A, page 1 |
| **Budget**: | A Budget showing anticipated sources and uses of cash (including DIP Loan advances) is attached as Exhibit B to the Interim Order. | Ex B |
| **Loan Limit** | $145,000 guaranteed if requested (Initial Loan Limit). Up to $500,000 upon consent of each Lender (Maximum Loan Limit). | Ex. A, ¶ 2 |
| **Interest Rate**: | 0.86% per annum | Ex. A, ¶ 7 |
| **Fees**: | None. | n/a |
| **Cross-Collateralization**: [Local Bankr. R. 4001-2(A)(2)(a)] | Not applicable. | n/a |
| **Parties with Interest in Cash Collateral**: [Fed. R. Bankr. P. 4001(b)(1)(B)(i)] | Not applicable. | n/a |
| **Use of Cash Collateral**: [Fed. R. Bankr. P. 4001(b)(1)(B)(ii)] | Not applicable | n/a |

---

[1] Those capitalized but undefined terms herein shall have the meaning set forth in the proposed DIP Agreement attached as Exhibit A to the Interim Order.

4

| Material Terms | Summary of Material Terms[1] | Interim Order or DIP Agreement Provision |
|---|---|---|
| **Duration of Use**:<br><br>[Fed R. Bankr. P. 4001(b)(1)(B)(iii)] | The Loan shall mature and Debtor's ability to borrow further shall terminate 120 days following the Petition Date, absent written consent of the Lenders to extend the Loan and court approval of the extension. In addition, the Debtor's right to borrow shall terminate upon (a) the occurrence of an Event of Default or the expiration of the cure period for certain Defaults (as provided in Section 14 of the Agreement) if the Default is not cured, (b) upon receipt by Debtor in full of the Walgreens Receivable[2], or (c) the effective date of a confirmed plan of reorganization in this case. The first of these events to occur shall be the "Maturity Date." In the event a portion of the Walgreens Receivable is received by Debtor but that amount is insufficient to repay Lenders in full, Debtor shall pay such proceeds to Lenders as partial repayment on the Obligations then outstanding. | Ex. A, ¶ 5 |
| **Events of Default**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(3)] | ***Payment***. Debtor fails to pay any Obligation to Lenders as and when due and payable;<br><br>***Representations and Warranties***. Any representation or warranty Debtor has made, or makes in the future proves to have been incorrect, incomplete, or misleading in any material respect on or as of the date it is made or deemed made, and Debtor does not cure such breach to Lenders' satisfaction within five (5) Banking Days of receipt of written notice of such breach by Lenders;<br><br>***Breach of Term or Condition***. Debtor fails to perform or observe any other material term or condition of this Agreement with Lenders, and Debtor does not cure such breach to Lenders' satisfaction with five (5) Banking Days of receipt of written notice of such breach by Lenders;<br><br>***Lenders' Rights***. Any of the Liens or other rights of Lenders in the Collateral at any time are not (or Debtor claims the right is not) a first (super) priority, valid, and perfected interest in the Collateral as set forth in the DIP Financing Orders or as otherwise provided herein with respect to any holder of a Prior Permitted Lien;<br><br>***Other Proceedings***. Debtor becomes involved in any proceeding that Lenders reasonably believes would result in a forfeiture of all or a substantial part of Debtor's assets, or in the entry of a material judgment against Debtor. | Ex. A ¶ 14 |
| **Adequate Protection**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iv)] | n/a | n/a |

---

[2] The Walgreens Receivable is approximately $819,000.

5

| **Material Terms** | **Summary of Material Terms**[1] | **Interim Order or DIP Agreement Provision** |
|---|---|---|
| **Priority of Adequate Protection Liens**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iv)] | n/a | n/a |
| **Findings of Fact Binding on the Debtor and Parties in Interest**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(2)(b); 4001-2(A)(3)] | None. | n/a |
| **506(c) Waiver**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(2)(c); 4001-2(A)(3)] | Upon entry of the Final Order, and except for the Carveout, the Obligations will be: i) Superpriority DIP Claims over all administrative expense claims and unsecured claims against Debtor now existing or hereinafter arising, including all administrative expense claims set forth in 11 U.S.C. Sections 105, 326, 328, 330, 331, 332, 333, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114, or any other provision of the Bankruptcy Code; and ii) secured pursuant to 11 U.S.C. Sections 364(c)(2) and (c)(3), and (with the exception of Prior Permitted Liens) Section 364(d)(1), and to the extent provided in the DIP Financing Orders will not be subject to any claims against the Collateral pursuant to 11 U.S.C. Section 506(c). | Ex. A, ¶ 17(a) |
| **Liens on Chapter 5 Causes of Actions**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local R. Bankr. P. 4001-2(A)(2)(d); 4001-2(A)(3)] | None | n/a |
| **Carveout**<br><br>---<br><br><br><br>**Committee Investigation Budget**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(2)(f); 4001-2(A)(3)] | The prepetition tax liens (if any) of governmental units and the operational and case-related obligations identified in the Budget shall be senior to the liens and claims of the Lenders.<br><br><br>There is no Committee in a subchapter V bankruptcy. | Ex. A, ¶ ¶ 1(g), 11(d) |
| **Roll-Up**: | n/a | n/a |

6

| Material Terms | Summary of Material Terms[1] | Interim Order or DIP Agreement Provision |
|---|---|---|
| [Local Bankr. R. 4001-2(A)(2)(e)] | | |
| **Waiver/Modification of Automatic Stay**:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(2)(i); 4001-2(A)(3)] | Ten (10) days following the delivery of a Notice of Event of Default, the automatic stay provisions of 11 U.S.C. Section 362 will be vacated and modified to the extent necessary to permit Lenders to exercise all rights and remedies set forth in any of the Loan Documents (the "Termination Date"). Upon the occurrence of the Termination Date, Lenders may also (in their sole and absolute discretion) take any of the following actions without further notice, and without further order from, or application to, the Bankruptcy Court:<br><br>(a) Terminate Commitment. Terminate any obligation to make any further advances or financial accommodations to Borrower;<br><br>(b) Collateral. Subject to the rights of any holder of a Prior Permitted Lien, enforce all rights against any Collateral in the possession of Lenders, including disposing of the Collateral solely for application towards the Obligations; and/or<br><br>(c) Other Action. Take any other action, or enforce any other right or remedy, provided by any applicable Law, or the Loan Documents. | Ex. A, ¶ 15 |
| **Adequacy of Budget**:<br><br>[Local Bankr. R. 4001-2(A)(4)] | The Debtor has reason to believe that the cash flow and borrowing projected in the Budget will be adequate to support operations during the DIP period (inclusive of professional fees and disbursements) considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget. | Ex. B |

**BASES FOR THE REQUESTED RELIEF**

**A. Debtor in Possession Financing**

    *i.   The Proposed Debtor in Possession Financing Should Be Authorized*

17. The value of the Debtor's estate is dependent primarily on the sustained dedication of its employees. Interruption of the Debtor's business would severely impede its ability to maintain operations and the value of its estate for the benefit of its stakeholders. In order to continue its operations and preserve the value of their estate on a going-forward basis, the Debtor require the immediate availability of postpetition financing under the DIP Loan.

18. Access to the DIP Loan is also immediately necessary to provide comfort to third

parties, such as the Debtor's contractual counterparties, vendors, employees, and professionals regarding the adequacy of the Debtor's liquidity.

### ii. The Debtor Could Not Obtain Unsecured Financing

19.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available" without the protections of section 364(c) of the Bankruptcy Code. Bray v. Shenendoah Fed. Sav. and Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). Consequently, the statute imposes "no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id.

20.     As set forth above and in the First Day Declaration, the Debtor endeavored prior to commencing the Case to identify potential sources of postpetition financing. In the months leading up to the Petition Date, the Debtor and its advisors discussed alternative and debtor in possession financing with certain of the Debtor's existing constituents and also informally approached several third-party lenders. None of the potential lenders were willing to provide the financing on an unsecured, administrative claim basis.

### iii. The DIP Loan Terms Are Fair and Reasonable

21.     The Debtor respectfully request authorization to DIP Loan Agreement with the Lenders on the terms summarized below:

(a) ***Advances for Operations*** – The Lenders will agree to advance up to a maximum amount of $145,000 (the "***Initial Loan Limit***") on demand. Any combination of Lenders may agree to increase the Loan Limit to $500,000 (the "***Maximum Loan Limit***") without further court approval. The Debtor's right to borrow shall be ongoing subject to the Loan Limits, Maturity Date, and rights of the Lenders arising upon an Event of Default.

(b) ***Budgeted Use of Funds*** – The Debtor has identified anticipated sources and uses of cash (including DIP Loan advances) in the Budget, including payroll, inventory purchases, and case professionals (the Debtor's professionals and the Sub V Trustee).

(c) ***Collateral*** – The DIP Agreement defines "Collateral" to be all personal property, real property and other assets of Borrower, whether now owned or hereinafter acquired (including any such assets acquired under any trade or

8

fictitious names), and whether leased to or from Borrower, regardless of where located, including: (a) cash and cash equivalents; (b) all funds in any account of Borrower; (c) all accounts and other receivables; (d) contract rights; (e) instruments, documents, and chattel paper; (f) machinery; (g) equipment; (h) inventory; (i) work in process; (j) general intangibles; (k) patents, trademarks, tradenames, copyrights and all other intellectual property; (l) capital stock; (m) investment property; (n) commercial tort claims and all other claims and causes of action; (o) supporting obligations; (p) letter of credit rights; (q) the proceeds of all claims or causes of action (excluding rights or the proceeds thereof of any actions arising under Chapter 5 of the Bankruptcy Code); and (r) to the extent not covered by the foregoing, Collateral also includes: i) all other assets or property of Borrower (whether tangible or intangible, real, personal, or mixed); ii) all products and proceeds of each of the foregoing; iii) all accessions to, substitutions of, and replacements for any of the foregoing; iv) all rents, profits, and proceeds of the foregoing; and v) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to Borrower form time to time with respect to any of the foregoing; provided, however, that Collateral shall not include Borrower's rights or entitlement to proceeds, indemnity, warranty or contribution under past or present insurance policies covering directors and officers, professional negligence, workers compensation, or similar non-property related liabilities."

(d) ***Priming Liens*** – The Lenders' liens will be senior to any other party in interest, subject to any Prior Permitted Liens and the Carveout obligations.

(e) ***Interest*** – Interest will accrue at a rate of 0.86% per annum, and will be paid (pursuant to the Budget) on the first day of each month.

(f) ***Lenders' Fee*** – None.

(g) ***Superpriority Claim for Advances*** – The Lenders will receive a superpriority claim for the advances made under the DIP Agreement, subject to Prior Permitted Liens and the Carveout.

(h) ***Maturity Date*** – The Debtor's right to borrow shall end and its obligations under the DIP Agreement will be payable on the Maturity Date, which will be 90 days after the Petition Date (unless extended); or upon the earlier of (a) the occurrence of an Event of Default or the expiration of the cure period for certain Defaults if such Default is not cured, (b) upon receipt by Debtor of the Walgreens Receivable, or (c) the effective date of a confirmed plan of reorganization in this case.

(i) ***Events of Default*** - The list of events of default are set forth in Paragraph 14 of Exhibit A to the Interim Order.

22. In determining whether the terms of postpetition financing are fair and reasonable, courts consider the relative circumstances of both the debtor and the potential Lenders. In re Farmland Indus., Inc., 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003). As set forth above and in the First Day Declaration, the Debtor has a significant need for additional liquidity.

9

The Lenders are providing the DIP Loan under extremely favorable terms, including an interest rate of 0.86% per annum, based on the federal fund rate as of September 2021, light covenants, debtor-favorable default provisions, and no origination or similar fees.

23. Additionally, the DIP Loan does not deprive the Debtor's estate or other parties in interest of rights and powers by restricting the services for which professionals may be paid in the Case. Instead, the DIP Loan subjects the security interests and administrative expense claims granted to the Lenders to the Carveout for certain administrative and professional fees, including (a) fees required to be paid to governmental units, (b) fees payable to the Sub V Trustee, and (c) fees and disbursements incurred by other case professionals. Carveouts for the benefit of case professionals have been found to be reasonable and necessary to ensure that the Debtor's estate is adequately assisted by counsel and other professionals. See, e.g., In re Evanston Beauty Supply, Inc., 136 B.R. 171, 177 (Bankr. N.D. Ill. 1992).

24. The Debtor has determined that the terms of the DIP Loan are reasonable and appropriate under the circumstances.

### iv. *The DIP Loan Is Necessary to Preserve Assets of the Debtor's Estate and Is in the Best Interests of Creditors*

25. A debtor in possession "has the discretionary authority to exercise his business judgment in operating the Debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation." In re Commercial Mortg. and Finance Co., 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (quoting State of Ill. Dept. of Revenue v. Schechter, 195 B.R. 380, 384 (N.D. Ill. 1996)). To determine whether the business judgment standard is met, a court is "required to examine whether a reasonable businessperson would make a similar decision under similar circumstances." In re Exide Techs., 340 B.R. 222, 239 (Bankr. D. Del. 2006).

26. Here, the Debtor has determined in the exercise of its business judgment that entry into the DIP Loan is necessary to preserve the assets of its estate and is in the best interests of

creditors. Without postpetition funding, the Debtor will lack the liquidity necessary to continue operating. The DIP Loan represents the Debtor's best option for survival, and is in the best interests of the Debtor, its estate, and its creditors. Accordingly, the Debtor's decision to enter into the proposed DIP Loan is a sound exercise of its judgment that warrants approval by the Court.

### v. *The Lenders are Entitled to Superpriority, Subject to Appropriate Carveout for Budgeted Items and Protections for Prior Permitted Liens*

27. Section 364(c) and (d) of the Bankruptcy Code authorizes the Debtor to incur postpetition debt as requested herein. If a debtor in possession is unable to obtain unsecured credit allowable as an administrative expense, and the Debtor demonstrates that the to-be-subordinated creditors are adequately protected, the Bankruptcy Code authorizes such debtor in possession to incur debt secured by priming liens. 11 U.S.C. § 364(d)(1). Under the circumstances, the Debtor has concluded that Lenders are the only parties willing to finance the Debtor's operations in the amounts necessary to successfully operate during the pendency of the Case. On these facts, the relief requested is warranted.

28. The DIP Agreement provides that the DIP Loan shall be a superpriority administrative expense under section 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Case or any successor case), and shall at all times be senior to the rights of the Debtor, any successor trustee or estate representative in the Case or any successor case (the "**Superpriority Claims**"), provided that the Carveout (including prepetition tax liens (if any) of governmental units and the categories of operational and case-related costs identified in the Budget (including the approved fees and expenses of case professionals and the Sub V Trustee)) shall remain superior to the Lenders' liens and claims.

11

29. Subject to the Carveout, as security for the DIP Loan, the Debtor propose granting the Lenders pursuant to section 364(d) of the Bankruptcy Code a valid, perfected, senior priming lien and security interest in all of the Collateral.

30. Through this Motion, the Debtor propose that the Lenders' senior priming liens (subject to the Carveout and Prior Permitted Liens) shall be deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that the automatic stay imposed pursuant to § 362 of the Bankruptcy Code shall be deemed lifted for the limited purpose of allowing the Lenders, at their sole option, to file or record or cause the Debtor to obtain third party consents or execute, file or record, at the Lenders' expense any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as the Lenders may require.

## BANKRUPTCY RULE 6003 IS SATISFIED

31. Bankruptcy Rule 6003 empowers a court to grant relief within the first 30 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed in the First Day Declaration and above, the Debtor's need for cash support is immediate, as well over $800,000 in accounts receivable from customers representing over 80% of the Debtor's revenue stream have been locked up due to a pending citation proceeding.

32. Failure to receive such authorization and other relief during the first 30 days of this Case would disrupt the Debtor's ability to operate at this critical juncture. Thus, the relief requested here is necessary for the Debtor to operate its business in the ordinary course, preserve the ongoing value of the Debtor's operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in

this Motion.

## WAIVER OF BANKRUPTCY RULES 6004(a) & (h)

33. To implement the relief sought here successfully, the Debtor also requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

34. Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity of any claim against the Debtor or the existence of any lien against the Debtor's property; (b) a waiver of the Debtor's rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease under Bankruptcy Code § 365; or (f) a limitation on the Debtor's rights under Bankruptcy Code § 365 to assume or reject any executory contract or unexpired lease with any party, subject to the provisions of any orders entered by this Court granting the relief requested by this Motion. Nothing contained in the proposed orders attached to this Motion shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

## NOTICE & NO PRIOR REQUEST

35. The Debtor is providing notice of this emergency Motion to the following parties or their respective counsel: (a) the United States Trustee for the Northern District of Illinois; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) counsel to 550 St. Clair Retail Associates, LLC; and (d) counsel to Novack & Macey LLP by email, telephone, and/or overnight delivery. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given. The Debtor will provide such additional notice as may be required and appropriate in advance of the Final Hearing on this matter.

36. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

*Wherefore*, the Debtor requests that the Court enter interim and final orders, substantially in the same form attached to this Motion: (a) granting the relief requested in this Motion; and (b) any other further relief the Court deems appropriate under the circumstances.

Date: October 27, 2021

*Golden Fleece Beverages, Inc.*

By: /s/ Jonathan Friedland
    One of its Attorneys

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400
Facsimile: 312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*