UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**NOTICE OF EMERGENCY MOTION**

*Please take notice* that on **Monday, November 1, 2021, at 9:00 a.m. C.T.** the undersigned will appear before the Honorable David D. Cleary, or any judge sitting in his place, and present the motion *Debtor's Emergency Motion For Authority to (1) Maintain Existing Bank Accounts; (2) Continue Using Existing Cash Management System; (3) Continue Using Existing Business Forms; (4) Modify Investment & Deposit Requirements Under 11 U.S.C. § 345(b); & (5) Related Relief*, a copy of which is attached here.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard at the hearing, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1.669.254.5252 or 1.646.828.7666. then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is **161 122 6457** and the password is **Cleary644**.The Meeting ID and passcode can also be found on Judge Cleary's webpage on the court's website, https://www.ilnb.uscourts.gov/content/judge-david-d-cleary.

**If you object to this motion,** such objections may be made at the hearing, including any opposition on the basis that emergency treatment is not appropriate.

Date: October 27, 2021

*Golden Fleece Beverages, Inc.*

By:  /s/ Jonathan Friedland
       One of its Attorneys

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*

SFGH:4848-2074-6238v2

1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) MAINTAIN EXISTING BANK ACCOUNTS; (2) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEM; (3) CONTINUE USING EXISTING BUSINESS FORMS; (4) MODIFY INVESTMENT & DEPOSIT REQUIREMENTS UNDER 11 U.S.C. § 345(b); & (5) RELATED RELIEF**

Golden Fleece Beverages, Inc., the debtor and debtor in possession (the "*Debtor*") in the above-captioned Chapter 11 case (the "*Case*") submits this emergency motion (the "*Motion*") seeking interim and final orders, substantially in the form attached here, authorizing the Debtor to (1) continue using its cash management system subject to modifications as set forth in this Motion; (2) maintain its existing bank accounts; (3) continue using existing business forms; (4) modify certain investment & deposit requirements imposed by 11 U.S.C. § 345(b) for cause; and (5) granting related relief. In support of the Motion, the Debtor states:

**JURISDICTION & VENUE**

1. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this Case and the Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 105, 345, 363, 1184, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

**BACKGROUND**

3. The Debtor filed this Case on October 16, 2021 (the "*Petition Date*"), electing to proceed under subchapter V of chapter 11. (Dkt. 1). The Debtor continues to manage its financial affairs as debtor in possession under §§ 1181 and 1184 of the Bankruptcy Code.

4. A more complete description of the Debtor's business and history is set forth in the

*Declaration of Candace MacLeod in Support of Debtor's Chapter 11 Petition & First Day Relief* (the "**First Day Declaration**"), filed contemporaneously with this Motion.

### A. The Debtor's Cash Management System

5. The Debtor operates its business in the ordinary course under an integrated, centralized cash management system (the "**Cash Management System**") comparable to the cash management systems used by similarly situated companies, to manage its cash in a cost-effective, efficient manner.

6. The Cash Management System is administered by the Debtor to collect funds from various sources to fund operations and pay various operating and administrative expenses. The Debtor uses the Cash Management System in the ordinary course of business to collect, transfer, and distribute funds generated from its operations and to facilitate cash monitoring, forecasting, and reporting.

### B. The Debtor's Existing Bank Accounts & Business Forms

7. The Debtor maintains four separate commercial bank accounts, held at JP Morgan Chase Bank, N.A. (the "**Bank**," or "**Chase**,") described as follows:

*(a) Operating Account*

The Cash Management System centers around the Debtor's account ending in -6529 (the "**Operating Account**"), which it uses as its main operating and disbursement account. The Operating Account is used to take in deposits from the Debtor's various depository accounts, and use those funds to pay the Debtor's operating expenses, using the monies deposited into the Operating Account to make all disbursements to meet the Debtor's ordinary course obligations, including payroll, vendor payments, expense reimbursements, processor fees, and bank fees, among others.

Postpetition, the Debtor anticipates that funds from the DIP Loan sought under the *Debtor's Emergency Motion for Interim and Final Orders Authorizing the Debtor to Incur Postpetition Debt*, filed concurrently with this Motion, will be disbursed to the Operating Account.

*(b) Licensing Account*

The Debtor uses a separate account ending in -6537 for purposes of receiving payments from its various licensing partners (the "**Licensing Account**") as part

3

of the Cash Management System. The Licensing Account is used to track and account for receipts from the Debtor's various licensing partners. Funds held in the Licensing Account are periodically transferred to the Licensing Account to fund the Operating Account. Generally speaking, such transfers are made daily when the Debtor receives funds into the Licensing Account.

### *(c) CPG Account*

The Debtor also uses a separate account ending in -6522 for purposes of receiving payments from customers on account of CPG sales (the "***CPG Account***") as part of the Cash Management System. The CPG Account is used to track and account for sales through the Debtor's consumer package goods customers. Funds held in the CPG Account are periodically transferred to the Operating Account to fund the Operating Account, generally speaking, such transfers are made daily when the Debtor receives funds into the CPG Account.

### *(d) Holding Account*

The Debtor also maintains an account ending in -1879 with the Bank as part of the Cash Management System for the purpose of holding and accounting for funds transferred to the Debtor as capital infusions from equity holders (the "***Holding Account***"). Funds held in the Holding Account (to the extent any are held) are available to the Debtor t in the event that the Debtor does not hold enough funds in the Operating Account to pay its expenses in the ordinary course.

8. The Debtor also regularly uses company-specific business and banking forms, including checks; letterhead; envelopes; invoices; purchase orders; guest receipts and other common forms in the day-to-day conduct of its affairs (collectively, the "***Business Forms***").

### C. The Debtor's Need to Maintain the Cash Management System & Facilitate Postpetition Operations

9. The Cash Management System touches all aspects of the Debtor's business operations, and by its nature, is critical to the integrated management of the Debtor's financial affairs. The overwhelming majority of the Debtor's business transactions are conducted electronically, tied directly to the Bank Accounts. Additionally, the Cash Management System is integrated directly with the Debtor's accounting system to track and receive information regarding the Debtor's business, including tracking and accounting for receipts from specific sources, projecting future revenues and income, and managing employee, vendor, and customer payments and receipts. The Debtor needs to be able to continue operating its business in the

ordinary course under the Cash Management System and should not be forced to disrupt its regular business activities at a time when restarting operations is so critical to the Debtor's ability to reorganize.

10. Additionally, given the nature of the Debtor's business, any disruption to the Cash Management System would have an immediate adverse effect on its business and operations to the detriment of its estate and numerous stakeholders. Accordingly, to minimize the disruption caused by this Case and to maximize the value of the Debtor's estate, the Debtor requests authority, but not direction, to continue to utilize its existing Cash Management System during the pendency of this Case, subject to the terms described in this Motion.

### RELIEF REQUESTED

11. By this Motion, the Debtor seeks interim and final orders granting the Debtor authority to, among other things: (1) maintain the Cash Management System as described in this Motion; (2) maintain the Bank Accounts; (3) continue using its existing Business Forms; and (4) modify certain investment & deposit requirements imposed by 11 U.S.C. § 345(b). The Debtor also requests that the Court schedule a final hearing on this Motion within 45 days after entry of an interim order granting the Motion.

12. Courts in this and other districts have regularly waived certain U.S. Trustee Guidelines and allowed for the implementation of alternative procedures such as those proposed by this Motion. *See, e.g., In re Morgan Administration Inc, et al.*, No. 18-30039 (JPC) (Bankr N.D. Ill. Nov. 21, 2018); *In re Quadrant 4 System Corp.*, No. 17-19689 (JBS) (Bankr. N.D. Ill. July 7, 2017); *In re ITR Concession Co.*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014); *In re Edison Mission Energy,* No. 12-49219 (JPC) (Bankr. N.D. Ill. May 15, 2013); *In re GEI-RP (f/k/a Giordano's Enters., Inc.)*, No. 11-06098 (ERW) (Bankr. N.D. Ill. Feb. 17, 2011).

**A. The Court Should Authorize the Debtor's Continued Use of the Bank Accounts & Cash Management System**

13. The Debtor seeks authority from this Court to maintain its existing Bank Accounts

and continue using the Cash Management System under Bankruptcy Code §§ 105(a) and 363(c).

14. Unless otherwise ordered by the Court, the U.S. Trustee, through its *Operating Guidelines for Chapter 11 Cases* (the "**U.S. Trustee Guidelines**"), requires that the Debtor, as debtor in possession: (a) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor in possession accounts; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and the type of account on such checks. *See* U.S. Trustee Guidelines at ¶ 2.

15. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition transactions and help protect against the inadvertent postpetition payment of prepetition claims. The Debtor submits that—in this Case—modifying certain of these requirements is warranted, as strict enforcement of the U.S. Trustee Guidelines would severely disrupt the ordinary financial operations of the Debtor by reducing efficiencies and causing unnecessary expense.

16. The Debtor's Bank Accounts are held at a financially stable banking institution. To protect against the unauthorized payment of prepetition obligations, the Debtor represents that, if it is authorized to use the Bank Accounts, it will not pay any debts incurred before the Petition Date other than as authorized by this Court. Moreover, any new account that the Debtor opens will be (a) with a bank that is (i) organized under the laws of the United States or any state therein, (ii) is insured by the FDIC, and (iii) has executed, or is willing to immediately execute, a Uniform Depository Agreement with the U.S. Trustee; (b) be designated a "debtor in possession" account by the relevant Bank; and (c) comply with applicable provisions of any financing order entered in this Case. Additionally, the Debtor will provide the U.S. Trustee and Sub V Trustee with notice before opening any new bank accounts.

17. Enforcing the U.S. Trustee's requirements without modification would

significantly disrupt the Debtor's business. Indeed, as explained in more detail above, the Bank Accounts are integral components of the Cash Management System that allow the Debtor to centrally manage cash collection and disbursements.

18. The Debtor's current Cash Management System also enables the Debtor to trace funds and ensure that all transactions are adequately documented and readily ascertainable. The Debtor submits that parties in interest will not be harmed by the Debtor's maintenance of the Cash Management System, including the Bank Accounts, because the Debtor has implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date. Requiring the Debtor to open new bank accounts at this critical juncture would increase operating costs and cause delays that would negatively impact the Debtor's ability to operate its business.

19. The seamless operation of the Debtor's business will maximize the value of the Debtor's estate, and it should therefore (a) be permitted to continue maintaining the Bank Accounts and open new or close existing accounts as needed; and (b) have the relief sought in this Motion extend to any new accounts, by providing that such accounts are deemed Bank Accounts of the Debtor subject to the provisions of any interim or final order entered by the Court granting this Motion.

20. Despite the requirements set forth in the U.S. Trustee Guidelines, Bankruptcy Code § 363(c)(1) nevertheless permits the Debtor's continued use of the Bank Accounts and Cash Management System, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

21. To the extent that using the existing Cash Management System falls outside the ordinary course of business, such use is permitted by Bankruptcy Code §§ 363(b)(1) and 105(a). Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). And § 105(a) further provides that this Court may "issue any order . . . that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id* at § 105(a).

22. Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system allows a debtor ""to administer more efficiently and effectively its financial operations and assets." *In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all bank accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061.

23. Here, requiring the Debtor to adopt a new, segmented cash management system would be expensive, create unnecessary administrative burdens, and be unnecessarily disruptive to the operation of the Debtor's business. The existing Cash Management System, including use of the Bank Accounts, allows the Debtor to efficiently handle receivables, pay vendors, fund payroll, maintain insurance, pay taxing authorities and regulatory entities, and maintain appropriate reserves for taxes and other business-related obligations. A disruption of this system could have a severe and adverse effect on the Debtor's operations and needlessly harm the value of its business enterprise. By contrast, maintaining the current Cash Management System would greatly facilitate the Debtor's transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.

24. The Debtor submits that parties in interest will not be harmed by maintaining the Cash Management System, including the Bank Accounts, because the Debtor has implemented appropriate mechanisms to ensure that payments will not be made on account of obligations incurred before the Petition Date, other than those authorized by the Court. With the assistance of its professional advisors, the Debtor has implemented internal protocols that prohibit payments on account of prepetition debts. The Debtor will continue to work closely with the Bank

8

to issue stop payment orders on any checks that were issued prepetition so they will not be honored without the Court's approval. In light of such protective measures, the Debtor submits that maintaining the Cash Management System is in the best interests of its estate and creditors.

25. The Debtor therefore requests that the Court authorize its continued use of the existing Cash Management System. The Debtor specifically requests that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as bank accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business. The Debtor further requests that the Court authorize and direct the Banks to receive, process, honor, and pay any and all checks, wire transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that the Debtor will issue a stop payment order on any check or draft drawn, issued, or otherwise presented prior to the Petition Date so they will not be honored by the Bank except to the extent authorized by order of the Court.

26. The Debtor also requests that, to the extent the Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtor or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtor or to its estate on account of such prepetition check or other item honored postpetition. Such relief is reasonable and appropriate because these banks are not in a position to independently verify or audit whether the Debtor may pay a particular item in accordance with a Court order or otherwise.

27. Finally, the Debtor requests that the Court authorize it to continue to pay the Bank's ordinary course banking fees, and authorize the Bank (including any additional banks at which the Debtor may open new accounts under the terms of an order granting this Motion) to

chargeback returned items to the appropriate Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

### B. The Court Should Authorize the Debtor to Honor Certain Prepetition Obligations Related to the Cash Management System

28. In connection with the Cash Management System, the Debtor may incur fees and other charges (collectively, all such fees and charges, the "**Bank Account Claims**") in connection with (a) checks that have been dishonored or returned for insufficient funds in the applicable account, and (b) any reimbursement or other payment obligations, such as overdrafts, arising under any agreements governing the Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements (the "**Bank Account Agreements**"). Although the Debtor does not believe that there were any outstanding Bank Account Claims as of the Petition Date, the Debtor seeks authority under Bankruptcy Code §§ 105(a) and 363(b), to, in its sole discretion: pay or reimburse as necessary, the Banks in the ordinary course of business for any Bank Account Claims arising prior to, on, or after the Petition Date.

29. The Debtor also requests that, to the extent the Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion either (a) at the direction of the Debtor; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item honored postpetition. As part of this Motion, the Debtor is requesting authority, but not direction, to pay certain prepetition obligations.

30. With respect to some of these obligations, the Debtor may have issued checks prior to the Petition Date that have yet to clear the banking system. In other instances, the Debtor may issue the relevant check once the Court enters an order permitting the Debtor to do so.

31. The Debtor intends to issue stop payment orders on such checks that should not

be honored. Therefore, the Debtor requests that the Banks be authorized to rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored. The Debtor submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

### C. The Court Should Authorize the Debtor to Continue Using its Existing Business Forms

32. To avoid disruption of the Debtor's Cash Management System and unnecessary expenses to the estate, the Debtor also seeks authority to continue using its existing Business Forms, which do not include checks, substantially in the form existing immediately before the Petition Date, without reference to its status as debtor in possession. Moreover, the Debtor submits that the continued use of its current Business Forms will not prejudice parties in interest because parties doing business with the Debtor will undoubtedly know of the Debtor's status as a debtor-in-possession. Thus, modifying the Debtor's existing Business Forms is unnecessary and would be unduly burdensome to the Debtor.

### D. The Court Should Authorize the Debtor to Continue Using Debit & Wire Transfers

33. The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines requirement that all disbursements of estate funds be done by check and include a notation representing the reason for the disbursement. Considering the nature of the Debtor's operations, the Debtor needs to conduct transactions by debit or wire transfers and other similar electronic methods. If the Debtor is denied the opportunity to conduct transactions by debit, wire transfers, or other such methods used in the ordinary course of business, the Debtor's business operations would be disrupted unnecessarily, burdening the Debtor and its creditors with additional expenses. Thus, the Debtor requests authority from this Court to continue using debit, wire transfers, or other electronic methods in the ordinary course of its business to avoid

disruption of the Debtor's Cash Management System.

### E. Cause Exists to Modify § 345(b)'s Deposit Requirements

34. Bankruptcy Code § 345 governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code § 345(b) requires the estate to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the Court "for cause" orders otherwise. 11 U.S.C. § 345(b).

35. In evaluating whether "cause" for modification or waiver of these requirements exists, courts have considered a number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver or modification of the § 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver or modification under the circumstances. *See In re Serv. Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Here, these factors warrant a modification of the requirements of Bankruptcy Code § 345 to the extent the Cash Management System does not already strictly comply with its requirements.

36. As discussed above, the Bank Accounts are maintained at Chase. Chase is an authorized depository under the U.S. Trustee Guidelines, and the Bank Accounts are insured by the FDIC. Therefore, the Bank Accounts comply with Bankruptcy Code § 345(b). Out of an abundance of caution, however, to the extent that any Bank Accounts do not strictly comply with Bankruptcy Code § 345, the Debtor submits that cause exists to suspend any such noncompliance

on an interim basis as set forth in this Motion, given that all funds are deposited safely and prudently at financially-stable banking institutions.

### BANKRUPTCY RULE 6003 IS SATISFIED

37. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed in the First Day Declaration and above, (a) authorizing the Debtor to (i) continue using its existing Cash Management System, Bank Accounts, and Business Forms, and (ii) honor prepetition obligations related to the use thereof; and (c) waiving deposit requirements of Bankruptcy Code § 345 is integral to the Debtor's ability to transition its operations into this Case.

38. Failure to receive such authorization and other relief during the first 21 days of this Case would disrupt the Debtor's ability to operate at this critical juncture. Thus, the relief requested here is necessary for the Debtor to operate its business in the ordinary course, preserve the ongoing value of the Debtor's operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

### WAIVER OF BANKRUPTCY RULES 6004(a) & (h)

39. To implement the relief sought here successfully, the Debtor also requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

40. Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity of any claim against the Debtor or the existence of any lien against the Debtor's property; (b) a waiver of the Debtor's rights to dispute any claim or lien on any grounds; (c) a

promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease under Bankruptcy Code § 365; or (f) a limitation on the Debtor's rights under Bankruptcy Code § 365 to assume or reject any executory contract or unexpired lease with any party, subject to the provisions of any orders entered by this Court granting the relief requested by this Motion. Nothing contained in the proposed orders attached to this Motion shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

## NOTICE & NO PRIOR REQUEST

41.     The Debtor is providing notice of this emergency Motion to the following parties or their respective counsel: (a) the United States Trustee for the Northern District of Illinois; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) the Bank; (d) counsel to 550 St. Clair Retail Associates, LLC; and (e) counsel to Novack & Macey LLP by email, telephone, and/or overnight delivery. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given. The Debtor will provide such additional notice as may be required and appropriate in advance of the final hearing on this matter.

42.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

*Wherefore*, the Debtor requests that the Court enter interim and final orders, substantially in the same form attached to this Motion: (a) granting the relief requested in this Motion; and (b) any other further relief the Court deems appropriate under the circumstances.

Date: October 27, 2021                    *Golden Fleece Beverages, Inc.*

                                By:  /s/ Jonathan Friedland
                                        One of its Attorneys

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*