UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**NOTICE OF EMERGENCY MOTION**

*Please take notice* that on **Monday, November 1, 2021, at 9:00 a.m. C.T.** the undersigned will appear before the Honorable David D. Cleary, or any judge sitting in his place, and present the *Debtor's Emergency Motion for Authority to (1) Pay Prepetition Employee Obligations; (2) Continue Administering Employee Benefits Plans; & (3) Direct all Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations*, a copy of which is attached here.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard at the hearing, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1.669.254.5252 or 1.646.828.7666. then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is **161 122 6457** and the password is **Cleary644**.The Meeting ID and passcode can also be found on Judge Cleary's webpage on the court's website, https://www.ilnb.uscourts.gov/content/judge-david-d-cleary.

**If you object to this motion,** such objections may be made at the hearing, including any opposition on the basis that emergency treatment is not appropriate.

Date: October 27, 2021

*Golden Fleece Beverages, Inc.*

By:  /s/ Jonathan Friedland
        One of its Attorneys

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*

SFGH:4840-3125-5806v6

1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) PAY PREPETITION EMPLOYEE OBLIGATIONS; (2) CONTINUE ADMINISTERING EMPLOYEE BENEFITS PLANS; & (3) DIRECT ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS**

Golden Fleece Beverages, Inc., the debtor and debtor in possession (the "***Debtor***") in the above-captioned Chapter 11 case (the "***Case***") through counsel, submits this emergency motion seeking interim and final orders, substantially in the form attached to this Motion, under 11 U.S.C. §§ 363(b), 507(a), and 541 authorizing, but not requiring, the Debtor to: (1) satisfy all prepetition Employee Obligations; (2) continue administering Employee Benefits plans; and (3) direct all banks to honor prepetition checks or wire transfers with respect to payments authorized by this emergency motion (the "***Motion***"). In support of this Motion, the Debtor states:

**JURISDICTION & VENUE**

1. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this Case and the Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested by this Motion are §§ 363(b), 507(a), and 541 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

**BACKGROUND & THE DEBTOR'S EMPLOYEE WAGE & BENEFITS PRACTICES**

3. On October 27, 2021 (the "***Petition Date***"), the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to manage its financial affairs as debtor-in-possession. A more complete description of the Debtor's operations and history is set forth in the *Declaration of Candace MacLeod in Support of Debtor's*

1

*Chapter 11 Petition & First Day Relief* (the "**First Day Declaration**") filed contemporaneously with this Motion.

4. The Debtor has a workforce consisting of six full time salaried and exempt employees (the "**Employees**").

5. As of the Petition Date, the Debtor estimates the aggregate amount of accrued, unpaid salary, and wages to Employees are approximately $19,811.38, exclusive of commissions not yet due and payable to certain Employees, as described in greater detail in paragraph 10 below (the "**Unpaid Compensation**"). The Debtor seeks authority to pay its Employees their Unpaid Compensation and honor certain other non-cash obligations. The Debtor will not pay Unpaid Compensation to any individual Employee exceeding the $13,650 cap imposed by § 507(a)(4) of the Bankruptcy Code.

**A. Employee Payroll**

6. In the ordinary course of business, the Debtor incurs payroll obligations for its Employees. Such obligations generally consist of wages, commissions, and salaries ("**Employee Compensation**"). The Debtor's employees are paid salaries, commissions, and wages on a bi-weekly basis. Wednesday is payday for all employees, with payment being made two weeks in arrears. On average, the total amount of bi-weekly Employee Compensation is approximately $24,000.

7. Employee Compensation is funded through ZenPayroll, Inc., dba Gusto ("**Gusto**"), a payroll service. To pay the Employee Compensation, the Debtor transmits payroll records to Gusto on the Mondays for payday later in the week. On those Mondays, Gusto debits the Debtor's bank accounts the amount referenced on the payroll records. On the regular payday, Gusto disburses the Employee Compensation to each Employee from the funds advanced by the Debtor, paying the Employee in arrears for the past two weeks' work.

8. The Debtor transmitted funds to Gusto to pay Employee Compensation to the Employees through October 15, 2021, and Gusto disbursed these funds to the Employees. Gusto

2

has not yet been funded to pay Employee Compensation for services rendered through October 31, 2021. Gusto is not holding any additional funds from the Debtor for Employee Compensation as of the Petition Date.

9. The Employees have not been paid outstanding Employee Compensation for the pay period beginning October 16, 2021, through the Petition Date.

10. Additionally, certain of the Debtor's employees are entitled to commission on account of CPG sales. Two of the Employees receive sales commissions based on sales of the Debtor's CPG products. Commissions are paid to these Employees upon the Debtor receiving payment from a customer on account of the relevant Employee's sales. Both Employees receive commission payments from all customer sales. Commission percentages are increased once the business reaches specific sales, and there is no cap on commission amount. As of the Petition Date, the total estimated commissions owed to Employees on account of prepetition sales—inclusive of sales relating to the Walgreens Receivable and the Kwik Trip Receivable—is approximately $21,481.57 that will become due and payable to the Employees following the Debtor's collection of roughly $859,000 in accounts receivable relating to these sales.

B. **Employment & Withholding Taxes**

11. The Debtor routinely withholds from its Employees' payroll amounts they are required to remit to various federal, state, and local taxing authorities and other governmental agencies (the "***Employee Deductions***", referred to collectively with Employee Compensation as the "***Employee Obligations***"). Examples of Employee Deductions include: Social Security Taxes; federal, state, and local income taxes; wage garnishments; and other court-ordered deductions. These taxes and other deduction obligations are usually calculated based on statutorily-mandated percentages of earned wages. The Debtor has historically paid all Employee Deductions, and by this motion, the Debtor seeks authority to continue doing so, and forward any outstanding prepetition Employee Deductions to the appropriate parties.

3

**C. Employee Benefits & Expense Reimbursements**

12. The Debtor offers its Employees certain benefits, including health insurance, dental and vision insurance, a 401(k), life insurance, disability insurance, accident insurance, flexible benefits, and paid time off (collectively, the "***Employee Benefits***"). The Debtor seeks to continue providing the Employee Benefits postpetition, and to honor all prepetition obligations related to the Employee Benefits.

13. The Debtor also regularly reimburses Employees, as well as one non-Employee, Roy Yu (the Debtor's Operating Partner, who is also a small indirect shareholder of the Debtor) for business expenses advanced on the Debtor's behalf by these individuals (the "***Expenses***"). Categories of Expenses that the Debtor reimburses for include but are not limited to customary travel, lodging, and meal expenses.

14. In addition, the Debtor reimburses Expenses for certain business expenses that these individuals advance from their personal credit cards on the Debtor's behalf, as a matter of expediency because the Debtor itself does not currently have a corporate credit card account, and in many cases no other method of payment is accepted by third parties on the timeframe needed by the Debtor. Such Expenses include advances made by individuals to pay for certain software platform subscriptions the Debtor uses to manage its business; freight charges for shipping through third parties; and overnight mailing services. Generally speaking, individual credit cards are only used for these Expenses when no other method is accepted in the necessary timeframe. The Debtor is working to migrate these expenses to its own accounts as it continues operations.

15. Individuals seeking reimbursement for Expenses from the Debtor do so on a monthly basis by submitting reimbursement requests through Expensify, the Debtor's expense reimbursement tracking software platform.

16. The Debtor has historically reimbursed the Employees and Mr. Yu for all Expenses in the ordinary course of its business, and by this motion, the Debtor seeks authority to continue doing so, and to reimburse Expenses sought by Employees, and only those prepetition Expenses

4

sought by Mr. Yu. The total amount of Expenses incurred prepetition is approximately $20,000 and, if this aspect of this Motion is approved, six people will be reimbursed.

### D. Bank Accounts

17. Finally, the Debtor requests that the Court authorize and direct all banks to receive, process, honor, and pay any checks or electronic transfers drawn on the Debtor's payroll and general accounts related to the Employee Obligations, Employee Benefits, and Expenses (together, the "***Prepetition Employee Obligations***"), whether presented before or after the Petition Date, upon receipt by each bank and institution of notice of such authorization, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtor further requests entry of interim and final orders prohibiting the Debtor's banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations. The Debtor also seeks an order authorizing it to issue new postpetition checks or effect new postpetition fund transfers on account of the prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

### RELIEF REQUESTED

18. By this Motion, the Debtor seeks to pay the Prepetition Employee Obligationsto , or for the benefit of, its Employees, and to continue providing Employee Benefits which were in effect prepetition. The Debtor submits that continuing to honor its Employee Compensation and Employee Benefits obligations is imperative to ensure the uninterrupted operation of its business; prevent undue harm to the Employees; and maximize the value of its bankruptcy estate.

19. In accordance with Bankruptcy Code §§ 363(c) and 1184, and as detailed here, the Debtor may honor Employee Payroll and Benefits, postpetition, in the ordinary course of business. And even if honoring the Employee Compensation and Employee Benefits obligations falls outside the ordinary course of business, honoring these obligations is a sound exercise of the Debtor's business judgment under § 363(b) of the Bankruptcy Code. Certain Employee

5

Compensation and Benefits are also entitled to priority treatment under §§ 507(a)(4) and (5) of the Bankruptcy Code, which the Debtor must maintain under applicable state and federal law.

20. Honoring the Employee Compensation and Benefits does not violate § 503 of the Bankruptcy Code.

21. For all of these reasons, discussed in detail below, this Motion should be granted.

### A. The Debtor Can Honor Employee Compensation & Benefits Obligations in the Ordinary Course of Business

22. Compensating employees in the ordinary course of business is critical to the Debtor's chapter 11 strategy, and the Debtor asserts that it has authority under the Bankruptcy Code to continue doing so postpetition. Section 363(c)(1) provides that, so long as "the business of the Debtor is authorized to be operated under [§ 1184 of the Bankruptcy Code] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1). And under § 1184, as a debtor in possession, the Debtor may operate its business unless a court orders otherwise. 11 U.S.C. § 1184. Accordingly, the Debtor asserts that sufficient cause exists to allow it to continue honoring Employee Compensation and Benefits in the ordinary course of business.

### B. Paying Employee Compensation & Benefits Is a Sound Exercise of the Debtor's Business Judgment, & in the Best Interest of its Estate

23. Even if the Court finds that honoring the Employee Compensation and Employee Benefits obligations falls outside the ordinary course of business, honoring these obligations is a sound exercise of the Debtor's business judgment, and the Court should authorize the Debtor to continue honoring these obligations postpetition.

24. Consistent with the Debtor's fiduciary duties as a debtor in possession, courts have authorized payment of prepetition obligations under Bankruptcy Code § 363(b) where a sound business purpose exists for doing so. *See Fulton State Bank v. Schipper (In re Schipper)*, 933

F.2d 513, 515 (7th Cir. 1991) (noting that a Debtor may sell property outside the ordinary course of business if it can provide "articulated business justification") (internal citations omitted); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (allowing contractor to pay prepetition claims of potential lien claimant-suppliers because payments were necessary for general contractors to release funds owed to Debtor). Specifically, once a Debtor articulates a valid business justification for a particular form of relief, the court reviews the Debtor's request under the business judgment rule. *See In re Commercial Mortg. and Fin. Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting discretionary authority to exercise business judgment in operating a Debtor's business "similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation.").

25. The business judgment rule is a presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. *See In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003). Consequently, a debtor's business decision "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, whim, or caprice.'" *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (quoting *In re Logical Software, Inc.*, 66 B.R. 683, 686 (Bankr. D. Mass. 1986).

26. The Debtor's retention of its Employees is also critical to its continued operations. The Debtor submits that the Court has the authority, under § 105(a) of the Bankruptcy Code, to exercise its general equitable powers to issue such orders necessary to carry out the provisions of the Bankruptcy Code, which courts have applied implement the priority provisions of §§ 363(b)(1) and 507(a) of the Bankruptcy Code in many instances. The Debtor seeks to treat each of the Employees equally, and seeks authority to pay prepetition obligations, nearly all of which are entitled to priority treatment under the Bankruptcy Code. Paying these priority claims will also

7

not affect the Debtor's unsecured creditors or the Debtor's bankruptcy estate, because these payments will either be made from collateral subject to security interests that would otherwise be unavailable to pay unsecured claims, or from proceeds available after satisfaction of such security interests from which such priority claims would be paid ahead of general unsecured creditors. The Debtor therefore submits that appropriate circumstances exist to grant this Motion.

27. Further, the Debtor's proposal to pay employee contribution components of the employer taxes, 401(k) Plan contributions, or payment of garnished wages will not prejudice the Debtor's estate because these withholdings are held in trust for the benefit of the related payees and therefore do not constitute property of the Debtor's estate under § 541 of the Bankruptcy Code. *See Begier v. IRS*, 496 U.S. 53 (1990). Moreover, payments which are critical to the retention and morale of the Debtor's workforce actually add value to the estate because an unplanned reduction in Employee retention or productivity could have disastrous effects on recoveries to unsecured creditors.

28. The Debtor submits that paying the Employee Obligations and Employee Benefits will maximize the value of its business, and minimize the operational disruptions caused by the Debtor's bankruptcy. The Employees' continued service and dedication are critical to the Debtor's prospects in this chapter 11 case.

29. The Debtor further submits that the relief sought by this Motion is the type of relief routinely recognized by this Court, and that paying employee obligations is essential to a Debtor's ability to operate in chapter 11. In recognition of the importance of the essential aspects of employee obligations, this Court routinely authorizes payment of prepetition wages, salaries, bonuses and commissions in numerous cases. *See, e.g., In re Quadrant 4 System Corporation., Case No. 17-19689 (JBS) (Bankr. N.D. Ill. July 7, 2017); In re LB Steel LLC*, Case No 15-35358 (JSB) (Bankr. N.D. Ill. Oct. 19, 2015); *In re Caesars Entertainment Co., Inc., et al.*, Case No. 15-01145(ABG) (Bankr. N.D. Ill. Jan. 1, 2015); *In re Giordano's Enters., Inc.*, Case No. 11-06098 (ERW) (Bankr. N.D. Ill. Feb. 17, 2011); *In re Gas City, Ltd.*, Case No. 10-47879 (ERW) (Bankr.

8

N.D. Ill. Oct. 27, 2010); *In re Hartmarx Corp.*, Case No. 09-02046 (BWB) (Bankr. N.D. Ill. Jan. 26, 2009); *In re Kimball Hill, Inc.*, Case No. 08-10095 (SPS) (Bankr. N.D. Ill. Apr. 25, 2008).

30. Even though the Debtor seeks authority to pay the Employee Obligations and Employee Benefits, and continue providing the prepetition Employee Benefits, such action, if authorized, should not be deemed an assumption or adoption of any agreement or policy providing such coverage. The Debtor retains its rights to assume, reject, or modify any Employee wage, incentive, or benefits programs to the extent it is entitled to do so under existing contracts, agreements or applicable law.

### C. Bank Accounts

31. The Debtor also requests the entry of interim and final orders authorizing and directing all banks to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtor's accounts related to the Prepetition Employee Obligations, whether presented before or after the Petition Date, upon receipt by each bank and institution of notice of such authorization, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtor further requests entry of interim and final orders prohibiting the Debtor's banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an employee or other party for the Prepetition Employee Obligations. The Debtor also requests that the Court grant it authority to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations, to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

### COMPLIANCE WITH BANKRUPTCY RULE 6003

32. Bankruptcy Rule 6003 empowers the Court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed in this Motion, authorizing the Debtor to continue honoring the Employee Obligations and Benefits is essential for its continued operations in this Cas, and if the relief sought in this Motion is not granted during the first 21 days of this Case, the Debtor's

9

operations will be significantly disrupted, causing irreparable harm to the Debtor. The relief requested is necessary in order for the Debtor to operate its business in the ordinary course, preserve the ongoing value of its operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

### NOTICE & NO PRIOR REQUEST

33. The Debtor is providing notice of this emergency Motion to the following parties or their respective counsel: (a) the United States Trustee for the Northern District of Illinois; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) counsel to 550 St. Clair Retail Associates, LLC; and (e) counsel to Novack & Macey LLP by email, telephone, and/or overnight delivery. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given. The Debtor will provide such additional notice as may be required and appropriate in advance of the final hearing on this matter.

34. No prior request for the relief sought in this Motion has been made to this or any other court.

### CONCLUSION

*Wherefore,* the Debtor requests that the Court enter of interim and final orders, substantially in the same form attached to this Motion, authorizing, but not requiring, the Debtor to: (1) pay all prepetition Employee Obligations; (2) continue administering the Employee Benefits plans; (3) direct all banks to honor prepetition checks or wire transfers with respect to payments authorized by this Motion; and (4) grant any other, further relief the Court deems appropriate under the circumstances.

Date: October 27, 2021    *Golden Fleece Beverages, Inc.*

By:   /s/ Jonathan Friedland
     One of its Attorneys

Jonathan Friedland (IL No. 6257902)
Jack O'Connor (IL No. 6302674)
Mark Melickian (IL No. 6229843)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:   312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Proposed Counsel to the Debtor*