# Exhibit A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Golden Fleece Beverages, Inc., | ) | Case No. 21-12228 |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**DECLARATION OF JONATHAN P. FRIEDLAND IN SUPPORT OF DEBTOR'S APPLICATION TO
EMPLOY SUGAR FELSENTHAL GRAIS & HELSINGER LLP AS ATTORNEYS FOR THE DEBTOR
RETROACTIVE TO THE PETITION DATE**

I, Jonathan P. Friedland, hereby certify and declare as follows:

1.      I am a partner of the law firm of Sugar Felsenthal Grais & Helsinger LLP ("***SFGH***"
or "***Firm***"), whose offices are located at 30 N. LaSalle Street, Suite 3000, Chicago, Illinois 60602.
I am duly admitted to practice law in several states including the State of Illinois and in several
federal courts including the United States District Court for the Northern District of Illinois. I
submit this declaration (the "***Friedland Declaration***") in support of the *Application of the
Debtor for an Order Authorizing Retention of Sugar Felsenthal Grais & Helsinger LLP as
Counsel to the Debtor Retroactive to the Petition Date* (the "***Application***").

2.      I make this declaration from my own personal knowledge and from information
derived from the business records of SFGH. I will supplement this declaration as required by
Bankruptcy Rule 2014 if and when additional information becomes available concerning any
relationship or connection between the Debtor, its creditors or interest holders, and SFGH based
on information that comes to my attention.

**I.      The Debtor's Engagement of SFGH**

3.      The Debtor retained SFGH on September 10, 2021, as memorialized by an
engagement agreement (the "***Bankruptcy Engagement Agreement***") for SFGH to represent
the Debtor in preparing for and filing this Case, and to represent the Debtor as it as primary
counsel during this Case. A true and correct copy of the Bankruptcy Engagement Agreement is
attached here as **Exhibit 1**.

4.      Under the Bankruptcy Engagement Agreement, SFGH was paid a total of $100,000 as an advance payment retainer (the "***Retainer***"). The Debtor paid the Retainer as set forth below:

| Date Received | Amount | |
|---|---|---|
| 09.10.2021 | $ | 25,000.00 |
| 10.01.2021 | $ | 10,000.00 |
| 10.04.2021 | $ | 65,000.00 |
| **Total** | **$** | **100,000.00** |

5.      Prior to the Petition Date, SFGH drew down a total of $100,00.00 of the Retainer to pay for prepetition fees and expenses, representing the total amount of compensation and reimbursement of costs SFGH received for this engagement before the Petition Date, and the outstanding unapplied balance of the Retainer as of the Petition Date is $0.00.

6.      Following application of the entire amount of the Retainer, SFGH had an outstanding balance of about $15,000 to $20,000 owed to it by the Debtor immediately before the commencement of the chapter 11 case. SFGH agreed to write off all amounts owed in excess of $9,999.99.

7.      The Debtor also executed two Addenda to the Bankruptcy Engagement Agreement (collectively the "***Addenda***"), dated October 14, 2021, and October 26, 2021, respectively, agreeing to pay a postpetition retainer of $70,000 to SFGH, to be held in escrow pending interim approval of SFGH's fees by the Court, from the proceeds of the Debtor's proposed DIP Loan. *See* (Dkt. 11). True and correct copies of the Addenda are attached here as **Exhibit 2**.

8.      The Debtor seeks to retain and employ SFGH as its counsel under §§ 327(a), 328 and 1184 of title 11 of the United States Code (the "***Bankruptcy Code***") and Bankruptcy Rules 2014 and 2016. SFGH has extensive experience and knowledge in the fields of corporate reorganization and bankruptcy law, which experience will enable it to work in an efficient and cost-effective manner on behalf of the Debtor's estate.

2

9.     SFGH has significant expertise representing debtors, creditors' and equity committees, trustees, officers and directors, and other parties in interest in numerous bankruptcy cases across the country. In addition, SFGH is a full-service law firm with substantial expertise in many areas of law that may be relevant in this Case.

10.    With regard to debtor representations, SFGH's attorneys have represented numerous debtors of all sizes in complex chapter 11 cases (including subchapter V proceedings), including recent experience as counsel to the Debtor in *In re Peeled, Inc.*, Case No. 21-10513 (Bankr. D. Del.) (Subchapter V), a consumer-packaged goods company whose business was catastrophically affected by the COVID-19 pandemic; counsel to the Debtor in *In re Flix Brewhouse NM, LLC*, Case No. 21-30676 (Bankr. W.D. Tex.) (Subchapter V), a dine-in cinema located in Albuquerque, New Mexico; counsel to the Debtors in *In re Morgan Administration, Inc., et al., d/b/a Home Owners Bargain Outlet*, Case No. 18-30039 (Bankr. N.D. Ill.) a regional discount retailer with numerous locations in the Midwest, involving significant leasing issues as the Debtors ran going-out of-business sales; counsel to the Debtors in *In re GEM Hospitality, LLC, et al.*, Case No. 18-80361 (Bankr. C.D. Ill.), operators of two hotels in Peoria, Illinois, involving significant complex legal and business issues in the hospitality industry; and special healthcare reorganization counsel to the debtor in *In re Central Iowa Healthcare*, Case No. 16—2438-als11 (Bankr. S.D. Iowa), taking a regional (4 county) hospital/clinic system through a complex chapter 11. Other examples include serving as counsel to the debtors in *In re Chellino Crane, Inc., et al.*, Case No 17-14200 (Bankr. N.D. Ill.); *In re Agri-Fine, Inc.*, Case No. 15-61947 (Bankr N.D. Ill.); *In re Hydraulic Technologies, Inc.*, Case No. 07-61947 (Bankr. N.D. Ohio); and *In re Musicland Holdings, Inc.*, Case No. 06-10064., (Bankr. S.D.N.Y.).

11.    Some information about our practice is attached here as **Exhibit 3**. Accordingly, I believe SFGH possesses the requisite expertise and background to handle matters likely to arise in this Case.

12.    The services to be rendered by SFGH include:

(a) advising the Debtor with respect to its powers and duties as debtor in possession in the continued management and operation of its business and property;

(b) attending meetings and negotiating with creditor representatives and other parties in interest, and advising and consulting on the conduct of the Case, including all of the legal and administrative requirements of operating in Chapter 11 under Subchapter V;

(c) working with the Subchapter V trustee to successfully reorganize the Debtor's estate;

(d) taking appropriate action to protect and preserve the Debtor's assets, including prosecuting actions on behalf of the Debtor's estate, defending actions commenced against the Debtor's estate, negotiating any litigation in which the Debtor may be involved, and objections to claims filed against the Debtor's estate;

(e) preparing motions, applications, answers, orders, reports, papers and other pleadings necessary to administer the Debtor's estate;

(f) advising the Debtor with respect to its executory contracts and unexpired leases, and seeking court approval to assume or reject each, as appropriate;

(g) appearing before the Bankruptcy Court or other courts to assert or protect the interests of the Debtor and its estate; and

(h) performing other legal services for the Debtor that may be necessary and proper in connection with this Case.

## II.    SFGH is a Disinterested Person Under 11 U.S.C. § 101(14)

13.    I am not aware of any information indicating that SFGH, its partners, associates, or I (a) hold or represent any interest adverse to the Debtor or its estate, its creditors or equity security holders; or (b) represent any other entity having an interest adverse to the Debtor in connection with this Case.

14.    Further, as far as I have been able to ascertain, other than disclosed in this Declaration and in connection with rendering legal services to the Debtor, SFGH has no connection with the Debtor, its creditors, or any other party in interest in this Case, or the United States Trustee or any person employed in the Office of the United States Trustee, except as set forth in this Declaration.

15.     SFGH staff, under my supervision, conducted a search of SFGH's internal "conflicts" database for each of the following entities (collectively, the "***Search Parties***"):

      (a) the Debtor;

      (b) the Debtor's equity holders;

      (c) the Debtor's secured and unsecured creditors; and

      (d) other parties in interest

16.     In addition, because SFGH is a small law firm, currently comprised of 30 attorneys, I caused a list of Search Parties to be emailed to all of our attorneys as a "belt and suspenders" precaution, asking whether any SFGH attorney at the firm is aware of any relationships with such parties.

17.     SFGH previously served as counsel to Argo Tea, Inc. and its wholly owned subsidiaries (collectively, "***Argo***"). In that role, SFGH negotiated with certain creditors of Argo, defended citations to discover assets against Argo, and represented Argo in connection with the UCC Article 9 foreclosure by, and subsequent sale to, the Debtor. As a final matter, on behalf of Argo, SFGH prepared a transition services agreement between Argo and the Debtor. SFGH's representation of Argo concluded in March 2020.

18.     A full list of the Search Parties is attached to this Declaration as **Exhibit 4**. After reviewing the conflicts search, I have determined that SFGH has no conflicts with any party listed.

19.     In addition, to the best of my knowledge, information, and belief and in accordance with Bankruptcy Rule 5002, neither I, nor any attorney at SFGH is a relative of the United States Bankruptcy Judge assigned to this case, and SFGH does not have a connection with the United States Bankruptcy Judge that would render the Firm's retention in this Case improper.

20.     SFGH will continue to review the Debtor's complete lists of creditors. Based upon my review as of this date, I have determined that SFGH does not represent any party who has a material adverse interest with respect to the Debtor.

21.    In sum, I believe SFGH: (a) does not hold or represent any interest adverse to the Debtor in connection with the matters for which SFGH will be engaged; and (b) is disinterested. If the results of further investigation reveal any additional connections, SFGH will supplement this Declaration and make further disclosures as may be appropriate at that time.

## III.    SFGH's Professional Compensation

22.    SFGH intends to apply for compensation for professional services rendered in connection with this case, subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any administrative order entered by this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by SFGH. I anticipate the attorneys listed below will have at least some responsibility for this engagement. These attorneys, including their hourly rates for this engagement, are:

| Professional | Title | Years Experience | Hourly Rate |
|---|---|---|---|
| Jonathan P. Friedland | Senior Partner | 26 | $600 |
| Mark S. Melickian | Partner | 25 | $600 |
| John (Jack) R. O'Connor | Partner | 10 | $500 |
| Kathryn Nadro | Partner | 9 | $500 |
| David M. Madden | Counsel | 17 | $450 |
| Hajar Jouglaf | Associate | 3 | $350 |

23.    The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions. Other attorneys and paralegals from SFGH may also serve the Debtor in connection with the matters described in this Application, from time to time, at rates ranging between $295 and $600 per hour for attorneys, and $125 and $320 per hour for paralegals and law clerks.

24.     The Debtor has also agreed to reimburse SFGH, subject to the Court's approval, for actual, out of pocket expenses incurred by SFGH on the Debtor's behalf, including travel, offsite photocopying and mailing services by third party vendors, messenger or overnight delivery, international and third party conference calls, filing fees, title charges, and fees of expert witnesses, and court reporters. SFGH will charge for these expenses in a manner and at rates consistent with charges made generally to SFGH's other clients. SFGH will make every effort to minimize expenses in this case.

25.     No promises have been received by SFGH, nor by any of its personnel, as to compensation in connection with this case other than according to the provisions of the Bankruptcy Code. SFGH has no agreement with any other entity to share any compensation received by SFGH in connection with this case.

I declare under penalty of perjury under the laws of the United States that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct to the best of my knowledge.

Date: October 29, 2021          By:  _/s/  Jonathan Friedland_____
                                      Partner
                                      Sugar Felsenthal Grais & Helsinger LLP

**Friedland Declaration**
**Exhibit 1**

**Sugar Felsenthal
Grais & Helsinger LLP**

Jonathan P. Friedland
Direct: (312) 704-2770
Fax: (312) 704-2770
Email: jfriedland@sfgh.com

30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Office: (312) 704-9400

www.SFGH.com

September 10, 2021

*via email correspondence only*

Golden Fleece Beverages, Inc.
c/o Roy Yu, Operating Partner
250 E. Pearson St. #1601
Chicago, IL 60611
roy.yu@argotea.com

Re:   Engagement for Legal Services

Dear Roy:

Thank you for your trust in retaining me and Sugar Felsenthal Grais & Helsinger LLP (the "firm," "we" or "us") to advise Golden Fleece Beverages, Inc. ("you" or the "Company") in connection with a potential corporate restructuring.  We will do our best to advance your goals and achieve your objectives as efficiently as possible.  This letter sets out the terms of our engagement, so that you and the firm are clear on our respective roles.

1.   <u>Client</u>.  The Company is our only client in this engagement.  We will not be representing any of your affiliates, owners, members, directors, officers, or employees unless specifically engaged to do so.  We expect you will be our principal contact for purposes of this engagement.

2.   <u>Scope of Engagement</u>.  You have engaged the firm to represent you in connection with evaluating and executing strategic options with respect to restructuring matters.  We must mutually agree to any material change in our engagement.  The terms set out in this letter will apply to any new or expanded engagement unless we enter into a new engagement letter for the new matter.

3.   <u>Conflicts of Interest</u>.  While not a conflict with another firm client, I note that, as you know, the Firm and I represented Argo Tea, Inc. ("Argo") in connection with its insolvency and corporate restructuring matters, including in connection with the Article 9 foreclosure and sale that resulted in your acquisition of substantially all of Argo's assets, as well as the subsequent transition services agreement between you and Argo.  While I do not believe that any questions concerning the work we performed in connection with that earlier are likely to arise in the course of our current representation, I do note that both I and the Firm would be conflicted in the unlikely event any challenge was brought concerning the work we performed and the advice we provided and that, if

*SFGH*

**Sugar Felsenthal
Grais & Helsinger LLP**

you have any questions concerning our prior work, it would be advisable to review them with separate counsel.

4.      <u>Staffing</u>.  I will have primary responsibility for your matters.  I may involve other firm lawyers or legal assistants in order to provide you with timely and efficient services or to provide special expertise as needed.

5.      <u>Fees</u>.  Our fees are based on the time we spend working on your matter.  We bill in tenths of an hour.  We will try to allocate the work to the most qualified attorney while minimizing costs for you. My hourly rate will be $600.  Current rates for others who may work on your matters may be as low as $120 for paralegals and law clerks and as low as $325 for attorneys, but in no case will exceed mine.

6.      <u>Expenses</u>.  You are responsible for cash expenses and fees incurred in providing services to you.  These include fees and expenses for travel, computerized research, messenger or overnight delivery, international telephone calls, and specialized document processing fees.  This may also include co-counsel or other professionals whom we engage with your approval. You also are responsible for any filing fees due to government agencies. We may advance nominal fees and expenses, but invoices for significant third-party charges will be sent directly to you for prompt payment.

7.      <u>Billing and Payment</u>. We normally send a monthly statement of fees and disbursements but may do so more or less frequently. Please review your statement promptly.  If you have any questions about your statement, please raise them with me.  I will investigate any concerns and seek to promptly resolve the matter. Payment is due within 30 days of the statement date.  If you do not timely pay our statements, we may suspend work on your matter.

Although as stated above, our fees are based on the time we spend working on your matter, I am committed to making sure you do not pay for inefficiencies that may occur and which we could have avoided with better planning on our part. Some attorneys and law firms do not address this unless and until a client forces such a conversation, which is both bad business and wrong. Therefore, before you receive each statement, you can be sure that it has been reviewed with an eye toward making reductions where, in my opinion, the time spent on something was simply "too much." I nonetheless encourage you to review each bill with a critical eye and to ask questions when you have them. I want to continue to earn your respect and loyalty and a necessary component of doing so is for me to do my best to make sure you feel fairly treated.

You may pay your bill online by clicking on the "Pay Your Bill" link on our homepage at www.sfgh.com and following the instructions to our payment portal. We only accept online

**Sugar Felsenthal
Grais & Helsinger LLP**

payment of outstanding fees and expenses for which we have sent you an invoice. We do not accept online payment of retainers. By making payment through our payment portal, you (i) authorize us to charge your credit/debit card in the amount you specify and (ii) agree that the services provided as described on the invoice you are paying are acceptable to you. The firm may charge a bank processing fee for accepting online payments, as shown on our payment portal.

Unless prohibited by law, if you make a payment to us by credit or debit card, you agree not to cancel, revoke, charge back or dispute the charge on your credit or debit card for the payment. If you do so, you authorize us to disclose to the credit or debit card processer such information about the services we provided to you as we feel is necessary to address the cancellation, revocation, charge back or dispute. If it is later determined that the charge was properly authorized, you agree to pay all out-of-pocket fees and costs incurred by the firm as a result of the improper cancellation, revocation, charge back or dispute.

8. _Required Retainer_. We require an initial retainer of $25,000 (the "Initial Retainer") for this engagement, which I ask you to pay right away, and which shall be replenished by the Company as necessary. We will require that the Company replenish the Initial Retainer as we deem necessary and may require that additional retainer be paid (we refer to the Initial Retainer, replenishments of the Initial Retainer, and any additional retainer amounts, collectively, as the "Retainer") so that the Retainer is increased. If you fail to promptly pay any additional Retainer amount requested, we may suspend work on your matter until payment is made. The retainer is _not_ intended as an estimate or cap on our fees and disbursements for this matter.

The Retainer will be treated as an _advance payment retainer_ as a condition to our accepting this engagement. At the firm's discretion, either (i) we will deem some or all of the Retainer as representing advance payment for work performed and expenses incurred currently; or (ii) we will hold the Retainer as funds for work we will provide in the future and require you to pay our invoices currently. An advance payment retainer is different from and less common than a security retainer, which would be deposited in our client trust account and which would remain your property subject to our security interest until used to pay for our service. However, we require an advance payment retainer because of the Company's financial situation and potential litigation against the Company. Regardless of how we choose to apply the Retainer, it will become our property upon payment and will be deposited in our firm's general account, not in a separate client trust account for you. If the firm has not earned all the amounts that you paid us, we intend to return the excess to you upon completion of our engagement.

9. _Communication_. To enable us to represent you effectively, we ask you to cooperate with us and communicate with us openly. We will keep you informed of developments in your matter as it progresses. You agree to provide us with timely and complete responses to any requests

**Sugar Felsenthal
Grais & Helsinger LLP**

for documentation and information.  Also, you agree to inform us in writing of any changes in the name of the person we should contact about this matter. We ask that you answer the questions at the end of this letter to allow us to better communicate with you.

10.    <u>Confidentiality</u>.  We owe a duty of confidentiality to all our clients.  Accordingly, we cannot disclose to you, or use on your behalf, any information that we possess with respect to another client or former client.  Similarly, we cannot disclose or use your information for the benefit of another client, without your permission or unless required by law.

11.    <u>Electronic Communications and Storage.</u> We may communicate with you and others by voice, text, data, and email over wired and wireless networks and over the Internet.  There is a place at the end of this letter for you to tell us which email address we should use to communicate with you. Emails and documents sent to you by email (whether or not containing confidential information) will not be encrypted unless you request us, in writing, to encrypt outgoing email and we are able to agree with you and implement mutually acceptable encryption standards and protocols. We also store emails, documents and other client information on remote servers hosted by third parties that provide secure data storage. We believe the benefits of using these methods outweigh the risks of unauthorized access that may arise from using them.

12.    <u>Termination of Representation</u>.  You may terminate our representation at any time for any reason. We may also terminate our representation after giving you reasonable time to arrange alternative counsel.  Additionally, our representation of you will terminate automatically after we have performed the work on this engagement unless we separately agree in writing with you.

You must also pay for services provided after termination if, in our view, the services are necessary to protect your interests as part of our ethical obligations to you.

Although we periodically update our clients and the public about interesting or relevant legal developments, the firm will have no duty to inform you of new developments or changes in the law that may be relevant to your matter after our engagement terminates or to monitor renewal or notice dates or similar deadlines with respect to your matter after termination.

13.    <u>Document Retention</u>.  At any time, you may request that we deliver your client files (excluding internal work product) to you.  We may retain copies of your files, at our expense, for our own information. If you do not request the return of your files, we are authorized to destroy your files in accordance with our file retention policy then in effect, without further notice to you.

14.    <u>No Guarantee</u>. We can make no promise or guarantee to you about the outcome of this representation.

**Sugar Felsenthal
Grais & Helsinger LLP**

Golden Fleece Beverages, Inc.
September 10, 2021
Page 5 of 6

15.     <u>Governing Law</u>.  This engagement letter will be governed by the internal laws of the State of Illinois.

Please review this letter carefully.  Unless you promptly advise us to the contrary, we will rely on our understanding that this letter reflects the terms of our engagement.  To avoid doubt, we ask that you formally accept these terms by signing and returning a copy of this letter to me.

We are not obligated to begin providing services until we receive a signed copy of this letter.  We may, in our discretion, begin providing services to you at your spoken direction.  Even if you do not sign this letter, you must pay us for any services we have performed at your direction and related expenses.  Although we have set out the terms of our representation in the form of a letter, this letter is a binding legal contract.

Thank you for your trust in us.  We look forward to a mutually satisfactory and productive relationship with you in serving as your legal counsel.

Very truly yours,

SUGAR FELSENTHAL GRAIS & HELSINGER LLP

By: _____

Jonathan P. Friedland

I agree that this letter states the basis on which I have engaged Sugar Felsenthal Grais & Helsinger LLP as legal counsel.

**Golden Fleece Beverages, Inc.**

By: _____

Name: _____Roy Yu_____

Date: _____9/10/2021_____

**Sugar Felsenthal
Grais & Helsinger LLP**

Golden Fleece Beverages, Inc.
September 10, 2021
Page 6 of 6

**<u>Communications Preferences</u>**:

Please tell us the best telephone number to reach you: _____

Please tell us the best email address to reach you: _____

If we should fax you, please tell us the best fax number to use: _____

Please tell us how you prefer to receive invoices (mark one):

_____ U.S. Mail _____ Email _____ Other (please describe) _____

If there are any restrictions on when or how we should communicate with you, please write them below:

**Friedland Declaration**
**Exhibit 2**

## Sugar Felsenthal
## Grais & Helsinger LLP

Jonathan Friedland
Direct: (312) 704-2770
Fax: (312) 704-2770
Email: jfriedland@sfgh.com

30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Office: (312) 704-9400

www.SFGH.com

October 14, 2021

*via email correspondence only*

Golden Fleece Beverages, Inc.
Attn: Candace MacLeod, President
Roy Yu, Operating Partner
250 E. Pearson St. #1601
Chicago, IL 60611
candace.pappas@argotea.com
roy.yu@argotea.com

Re:    **Addendum to Engagement for Legal Services**

Dear Candace and Roy:

This letter is an addendum to that certain engagement letter dated September 10, 2021 (the "***Engagement Letter***") regarding Engagement for Legal Services of Sugar Felsenthal Grais & Helsinger LLP (the "***firm***," "***we***" or "***us***") to serve as corporate restructuring counsel to Golden Fleece Beverages, Inc. (the "***Company***").

As you are aware, the terms of the Engagement Letter specify that the firm has required that the Company pay us an advance payment retainer as a condition of our accepting the engagement. We have also advised you that, in the event the firm is not compensated, we may suspend work on the Company's behalf.

Given the limited DIP funding being made available and the amount of work we have done to date, I thought this addendum prudent. It doesn't expand on the terms of the Engagement Letter but, rather, highlights certain of our firm's rights thereunder.

Once the Company files bankruptcy, our firm can be paid only pursuant to court order. One result of this is that there can be substantial delay between the time we perform an hour of work and the time we able to be paid for that hour of work.

We will be tracking our work and the fees that accrue but remain unpaid on account of it. If at anytime we believe that there is not adequate assurance of being paid for that work, we will promptly file a motion to withdraw because not doing so would result in an unreasonable financial burden on our firm.

As you know, the contemplated debtor in possession lenders ("***DIP Lenders***") have agreed, subject to court approval, to advance $100,000 to the Company as soon as possible after



## Sugar Felsenthal
## Grais & Helsinger LLP

Golden Fleece Beverages, Inc.
October 14, 2021
Page 2 of 2

the date on which bankruptcy is filed (the "***Petition Date***") and have further agreed that $25,000 of those funds may be escrowed as additional advance payment retainer to help assure that we are paid. We already advised you that more funding from the DIP Lenders will be necessary if the Walgreens Receivable is not promptly paid to the Company. At that point, the DIP Lenders will either need to fund more or we will need to seek to withdraw. More generally, we intend to withdraw from our representation of the Company and terminate our engagement in the event that any additional Retainer amount requested is not funded.

If our representation of the Company ends, the Company will take all steps necessary to free the firm of any obligation to perform further services for it, including securing alternative counsel, and agrees to sign any documents necessary to substitute counsel and to consent to our withdrawal as the Company's counsel in any proceeding. The Company must pay for services provided and costs incurred through the date of termination.

Very truly yours,

SUGAR FELSENTHAL GRAIS & HELSINGER LLP

By: _____

Jonathan Friedland

**Approved & Agreed:**

**Golden Fleece Beverages, Inc.**

By: Candace MacLeod, President

By: Roy Yu, Operating Partner

# Sugar Felsenthal
# Grais & Helsinger LLP

Jonathan Friedland
Direct: (312) 704-2770
Fax: (312) 704-2770
Email: jfriedland@sfgh.com

30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Office: (312) 704-9400

www.SFGH.com

October 26, 2021

*via email correspondence only*

Golden Fleece Beverages, Inc.
Attn: Candace MacLeod, President
250 E. Pearson St. #1601
Chicago, IL 60611
candace.pappas@argotea.com

**Re:    Addendum to Engagement for Legal Services**

Dear Candace:

This letter is a second addendum (the "***Second Addendum***") to that certain engagement letter dated September 10, 2021 (the "***Engagement Letter***") regarding Engagement for Legal Services of Sugar Felsenthal Grais & Helsinger LLP (the "***firm***," "***we***" or "***us***") to serve as corporate restructuring counsel to Golden Fleece Beverages, Inc. (the "***Company***"). This Second Addendum supplements both the Engagement Letter and that certain Addendum to Engagement for Legal Services dated October 14, 2021 (the "***First Addendum***"), previously executed by the Company; provided, however, to the extent that the Second Addendum is inconsistent with the either the Engagement Letter or First Addendum, the terms of this Second Addendum supersede and control.

As you know, the Company contemplates filing a chapter 11, subchapter V bankruptcy case (the "***Subchapter V Case***") in the very near future and one of the first actions the Company will take in the Subchapter V case is to file a motion (the "***DIP Loan Motion***") seeking bankruptcy court approval of a debtor in possession loan under which debtor in possession lenders (the "***DIP Lenders***") have agreed, subject to such court approval, to advance $145,000 to the Company as soon as possible after the date on which the Subchapter V Case is filed (the "***Petition Date***") and the DIP Lenders have further agreed that $70,000 of those funds are to be immediately transferred to and held in escrow in the firm's trust account as additional advance payment retainer to help assure that we are paid for the firm's work, pending Bankruptcy Court approval for the firm to apply such funds to pay itself . Previously, the numbers stated above were $100,000 and $25,000 respectively. Having advised the Company that our firm requires additional security for this representation, the Company has agreed to these increases, and the DIP Lenders have agreed to fund them.

Our prior advice that more funding from the DIP Lenders will be necessary if the Walgreens Receivable is not promptly paid to the Company stands, as does our prior advice that our willingness to continue representing the Company in the Subchapter V Case is and continues to be



**Sugar Felsenthal
Grais & Helsinger LLP**

Golden Fleece Beverages, Inc.
October 26, 2021
Page 2 of 2

predicated on the Company escrowing the amounts provided-for in the Budget that is filed as an attachment to the DIP Loan Motion, to the firm's trust account when and as provided for in that Budget. We will be tracking our work and the fees that accrue but remain unpaid on account of that work. If at any time we believe that there is not adequate assurance of being paid for our work, we will promptly file a motion to withdraw as the Company's counsel, because not doing so would result in an unreasonable financial burden on our firm.

If you agree to amend the Engagement Letter and the First Addendum as provided in this Second Addendum, please sign and return it as soon as possible.

Very truly yours,

Sugar Felsenthal Grais & Helsinger LLP

By: _____
Jonathan Friedland

**Approved & Agreed:**

**Golden Fleece Beverages, Inc.**

DocuSigned by:
*Candace MacLeod*
33B844C5F4A4
By: Candace MacLeod, President

SFGH:4840-8844-6718v7

**Friedland Declaration**
**Exhibit 3**

# Sugar Felsenthal
# Grais & Helsinger LLP

**Sugar Felsenthal Grais & Helsinger LLP** offers comprehensive restructuring expertise through its Restructuring, Insolvency, and Special Situations (**RISS**) group as well as a full spectrum of legal services in core commercial practice areas (corporate, securities, real estate, tax, labor & employment, and commercial litigation) and decades of experience representing private clients in estate and tax planning.

SFGH's RISS team of eight dedicated insolvency professionals is recognized for its talent and creativity on behalf of clients facing critical and time-sensitive needs in financial restructuring, creditor's rights, distressed acquisition and investment, and other insolvency-centric matters.  Our commercial chapter 11 experience includes the nation's largest industry sectors – retail (local and national); farm and agri-business; food, hospitality and restaurant; franchise; transportation; healthcare; manufacturing (various sectors); distribution; commercial lending and bank holding companies; real estate and construction; technology;  and  professional services, among others.

The zealousness with which SFGH approaches its insolvency work shows in accolades received for its efforts on behalf of its clients.  Among them:  Turnaround Management Association's 2014 "*Large Transaction of the Year*" (sale of AgFeed Industries); M&A Advisor's 2014 "*Consumer Product of the Year Transaction*" (sale of Natural Pork Production II, LLP); M&A Advisor's 2018 "*363 Sale of the Year*" ($10M-$25M) (sale of Central Iowa Healthcare).

Jonathan P. Friedland, a member of the firm's Executive Committee, and Mark S. Melickian, who chairs the firm's RISS practice group, both clerked for bankruptcy judges and have over 25 years of experience in bankruptcy and insolvency matters.  Mark works closely on committee matters with Michael A. Brandess, who chairs the firm's committee practice, and partner Jack O'Connor, an experienced chapter 11 committee and debtor practitioner.  All of these attorneys have been  acknowledged  by  their  peers  and  the industries  they  serve  for  their  legal prowess, as their attached biographies attest.

Guiding our business clients through bankruptcy and insolvency situations - as a party in trouble, or as a party seeking to enforce rights or pursue an opportunity - requires a deep appreciation for the interests and expectations of all parties involved.  Our focus is to create value through measured strategy, cooperation and collaboration, and the utilization of our vast network of industry contacts.   Clients frequently praise our business judgment. We take great pride in providing exemplary service to our clients who we consider partners and friends.

Our attorneys' chapter 11 experience includes both local and national cases involving the liquidation or reorganization of assets from under $10 million to over $1 billion.   The following pages includes a representative sample of our team's commercial chapter 11 experience as well as summaries   of our representative bankruptcy committee representations.

If you have any questions regarding our practice, please feel free to contact Jon Friedland (jfriedland@SFGH.com or 312-704-2770), Mark Melickian (mmelickian@SFGH.com or 312-704-2174), Michael Brandess (mbrandess@SFGH.com or 312-704-2179), or Jack O'Connor (joconnor@SFGH.com or 312-704-2178).

**Sugar Felsenthal Grais & Helsinger LLP**
www.sfgh.com

| *Chicago Office* | *New York City Office* |
| --- | --- |
| 30 N. LaSalle St., Suite 3000 | 230 Park Avenue, Suite 908 |
| Chicago, IL  60602 | New York, NY 10169 |
| Tele:    (312) 704-9400 | Tele:    (212) 899-9780 |

SFGH

# Sugar Felsenthal
# Grais & Helsinger LLP

### *Representative Commercial Bankruptcy Experience*

SFGH bankruptcy team members have championed client interests in commercial bankruptcy cases across the country as counsel to debtor companies, creditor and equity committees, individual creditors, trustees, asset purchasers, and other parties in interest.  The following is a representative sample of our attorneys' collective commercial bankruptcy case experience:

203 N. LaSalle Street Partnership (U.S.)

A.G.A. Flowers (Bankr. S.D. Fla.)

AgFeed USA, LLC et al (Bankr. D. Del.)

Agri-Best Foods, Inc. (Bankr. N.D. Ill.)

Agri-Best Holdings, Inc. (Bankr. N.D. Ill.).

Agri-Fine (Bankr. N.D. Ill.)

Air South Airlines, Inc. (Bankr. D.S.C.)

Alliant Manufacturing (Bankr. N.D. Ill.)

Altheimer & Gray (Bankr. N.D. Ill.)

Arter & Hadden (Bankr. N.D. Ohio)

AMR Corporation (Bankr. S.D.N.Y)

Arch Aluminum & Glass Co. (Bankr. S.D. Fla.)

ATA Airlines, Inc. (Bankr. S.D. Ind.)

Atlas Air, Inc. (Bankr. S.D. Fla.).

Barfly Ventures, LLC (Bankr. W.D. Mich)

Blue Water Fiber (Bankr. E.D. Mich.)

Borders Group, Inc. (Bankr. S.D.N.Y.)

Builders Plumbing & Heating Supply Co. (Bankr. N.D. Ill.).

Caesars Entertaimnent (Bankr. N.D. Ill.)

Cafeteria Operators, LP (Bankr. N.D. Tex.)

Catherine Courts Condominium LLC (Bankr. N.D. Ill.)

Cee Bee's Finer Foods (Bankr. N.D. Ill.)

Central Grocers, Inc. (Bankr. N.D. Ill.)

Central Iowa Healthcare, Inc. (Bankr. S.D. Iowa)

Chellino Crane, Inc. (Bankr. N.D. Ill.)

Chrysler LLC (aka Old CarCo) (Bankr. S.D.N.Y.)

Circuit City Holdings, Inc. (Bankr. E.D. Va.)

Citation Corp. (Bankr. D. Ala.)

CPC Laboratories, Inc. (Bankr. N.D. Ill.)

CRP-2 Holdings AA, L.P. (Bankr. N.D. Ill.)

Cyclone Cattle, LLC (Bankr. S.D. Iowa)

Davis Manufacturing (Bankr. C.D. Cal.)

Delta Air Lines, Inc. (Bankr. S.D.N.Y.)

DeMert & Dougherty (Bankr. N.D. Ill.)

Dow Corning Corporation (Bankr. E.D. Mich.)

Duke & King Acquisition, Inc. (Bankr. D. Minn.).

El Paso BBQ (Bankr. D. Arizona)

Emerald Casino (Bankr. N.D. Ill.)

Etcher Farms, Inc., et al (Bankr. S.D. Iowa)

Favorite Brands Int. Holding Corp. (Bankr. D. Del.).

Florsheim, Inc. (Bankr. N.D. Ill.)

FLYi, Inc. (Independence Air) (Bankr. D. Del.).

# Sugar Felsenthal
# Grais & Helsinger LLP

Food Management Group LLC (Bankr. S.D.N.Y.)

Frankfort Inc., et al (f/k/a Rohn Industries, Inc.) (Bankr. S.D. Ind.)

Gas City. Ltd. (Bankr. N.D. Ill.)

GEM Hospitality, LLC et al (Bankr. C.D. Ill.)

General Motors Corporation (aka Motors Liquidation Corp.) (Bankr. S.D.N.Y.)

Giordano's Enterprises, Inc., et al. (Bankr. N.D. Ill.).

Gluth Bros. Construction, Inc. (Bankr. N.D. Ill.).

Golden Bear Oil Specialties, Inc. (Bankr. C.D. Cal.).

Hartford Computer Hardware, Inc.  (Bankr. N.D. Ill.)

Handy Andy Home Improvement (Bankr. N.D. Ill.)

Hubbards Bowling Lanes (Bankr. N.D. Ill.) Ingersoll, Inc. (Bankr. N.D. Ill.)

JS II, LLC (Bankr. N.D. Ill.).

Keast Industries, Inc.  (Bankr. S.D. Iowa) Kentuckiana Medical Center LLC (Bankr. S.D. Ind.) Kmart Corporation (Bankr. N.D. Ill.).

Knight-Celotex LLC (Bankr. N.D. Ill.).

Lehman Brothers Holdings, Inc. (Bankr. S.D.N.Y.)

Lynx Property Corp. (Lynx Associates) (Bankr. D.N.J.) LSC Communications, Inc. (Bankr. S.D.N.Y.)

Lyon Workspace Products, LLC, et al. (Bankr. N.D. Ill.).

LyondellBasell Industries, Inc. (Bankr. S.D.N.Y.)

Malese FK & Malease FK Corp.  (Bankr. E.D.N.Y.)

Mangia Mangia, Inc. (Bankr. N.D. Ill.).

McCandless LLC (Bankr. W.D. Penn.)

Mercy Hospital & Medical Center, et al (Bankr. N.D. Ill.)

Mervyn's Holdings, Inc. (Bankr. D. Del.)

Michael Tolomeo (Bankr. N.D. Ill.)

Midcom Communications, Inc. (Bankr. E.D. Mich.).

Midwest Banc Holdings, Inc. (Bankr. N.D. Ill.).

Montgomery Ward (Bankr. D. Del.).

Namco Cybertainment, Inc. (Bankr. D. Del.) Natural Pork Production II, LLP (Bankr. S.D. Iowa). New Creative Enterprises, Inc. (Bankr. S.D. Ohio) New Page Corporation (Bankr. D. Del.)

Newton Manufacturing Co. (Bankr. S.D. Iowa)

Northwest Airlines Corporation (Bankr. S.D.N.Y.).

Oildale, Inc. (Bankr. C.D. Cal.)

Pacific Gas & Electric (Bankr. N.D. Cal.).

Peeled, Inc (Bankr. D. Del.)

Pere Marquette Hotel (Bankr. C.D. Ill.)

Perfect Brow Art, Inc., et al (Bankr. N.D. Ill.)

Petrie Retail (Bankr. D. Del.)

Pioneer Health Services, Inc. (Bankr. S. D. Miss.)

Pittsburgh Sports Associates (Pittsburgh Penguins) (Bankr. W.D. Penn.)

Quadrant 4 System Corporation, et al. (Bankr. N.D. Ill.) Renaissance Residential of Countryside, LLC (Bankr. N.D. Ill.)

Rite Way Mechanical Installations, Inc. (Bankr. D. Minn.).

RWJ Management Co., Inc., et al. (Bankr. N.D. Ill.).

**Sugar Felsenthal Grais & Helsinger LLP**

Sage Enterprises, Inc. (Bankr. N.D. Ill.)

Schwab Industries, Inc. (nka SII Liquidation Company) (Bankr. N.D. Ohio).

Service Merchandise (Bankr. D. Del.)

SNA Nut Co.  (Bankr. N.D. Ill.)

Southern Foods Group, LLC, d/b/a Dean Foods (Bankr. S.D. Tex)

SyNet (Bankr. N.D. Ill.)

TEC Foods, Inc. (Bankr. E.D. Mich.)

Telehub Communication Corporation (Bankr. N.D. Ill.).

Tokheim Corporation (Bankr. D. Del.).

Trainor Glass Company (Bankr. N.D. Ill.).

Tribune Company (nka Tribune Media Company) (Bankr. D. Del.)

United Airlines, Inc. (Bankr. N.D. Ill.).

USN Communications (Bankr. D. Del.)

Valbois Inc. (Bank. D. Idaho)

Wagstaff Minnesota Inc., et al. (Bankr. D. Minn.).

Washington Mutual, Inc. (Bankr. D. Del.)

Workflow Management, Inc. (Bankr. E.D. Va.)

World Marketing Chicago, LLC et al (Bankr. N.D. Ill.)

WorldCom (Bankr. D. Del.)

**Friedland Declaration**
**Exhibit 4**

**Golden Fleece Beverages, Inc. Conflicts Search Parties Flix Brewhouse NM LLC Conflicts Search Parties**

**Debtor**
Golden Fleece Beverages, Inc.

**Equity Owners & Other Related Parties**
G&K Investment Holdings LLC
National Investment Holdings LLC
QRSTU LLC
Skydeck Holdings II LLC
Vicinet LLC
Arsen Avakian
Glen Tullman
Greg Wasson

**Creditors & Other Interested Parties**
550 St. Clair Retail Associates, LLC
Arrive Logistics
Arrow Trans
Beitler
Beyer Insurance Agency
Brandfolder
C.H. Robinson Company, Inc.
Clark Hill PLC
Clutch Global Logistics
Coyote Logistics
DevTech PET, Inc
FGS, Inc
First Logistics Management Svc.
Foodarom Group Inc.
Fox Logistics
Genius Central Systems, Inc.
Global Plastics
Golenbock Eiseman Assor Bell & Peskoe LLP
Gordon Food Service, Inc.
Greco and Sons
Halssen & Lyon GMBH
iD Commerce + Logistics
Illinois Attorney General
Illinois Department of Employment Security
Illinois Department of Revenue
Imperial Bag & Paper Co.

Information Resources, Inc.
Innovative Energy Solutions
Jacqueline Powers
JPMorgan Chase Bank, N.A.
Karleigh Santry
Kimberly Cook
Kwik Trip, Inc.
Labels Unlimited
Levenfeld Pearlstein
Liberty Mutual Insurance
Lion Logistics
Matthew Dickman
Mono GmbH
Nextway Trucking Company
Novack and Macey LLP
O-I Packaging Solutions
Peak, LLC, as Representative
Peter Kazanas
Rauch-Milliken International, Inc
Regas, Frezados & Dallas LLP
RWB Trucking, LLC
Sath Inc.
Semyon Simonyan
Shelbi Vantrease
Small Business Administration
Sleeve Seal
Stapleton Spence Packing Co.
SYSCO
Tate & Lyle Food & Beverage Solutions
Total Quality Logistics
TransGroup Global Logistics
Union of Orthodox Jewish Congregations of America
Varilease Finance, Inc.
Veteran's Truck Line, Inc.
Verizon Media Inc.
Walgreens
WFC Fund, LLC
Wilson Sonsini Goodrich & Rosati PC