**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| **Golden Fleece Beverages, Inc.,** | ) | Case No. 21-12228 |
| | ) | |
| | ) | Hon. David D. Cleary |
| Debtor. | ) | |

**OBJECTION OF 550 ST. CLAIR RETAIL ASSOCIATES, LLC TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO INCUR POSTPETITION DEBT**

NOW COMES 550 St. Clair Retail Associates, LLC ("**550 St. Clair**"), a judgment lien creditor herein, by and through its undersigned counsel, and hereby respectfully objects to *Debtor's Emergency Motion for Interim & Final Orders Authorizing the Debtor to Incur Postpetition Debt* [Doc. No. 11] (the "**Motion**"). In support hereof, 550 St. Clair respectfully states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over the subject matter of this objection pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §364.

2. This is a core proceeding pursuant to 28 U.S.C. §§ 157(2)(b)(A), (D) and (O).

**Summary**

3. With the Motion, Golden Fleece Beverages, Inc. ("**Golden Fleece**" and the "**Debtor**") seeks Court authorization to incur postpetition debt pursuant to Section 364(c)(1), (2) and (3) and Section 364(d). In doing so, it inaccurately states that "[t]he Debtor does not have any secured creditors" (¶12), knowing full well that 550 St. Clair asserts a judgment lien arguably encumbering all of the Debtor's assets. In fact, the validity of this judgment lien has been the focus of extensive litigation before the Circuit Court of Cook County, Illinois, County Department,

1

Law Division (the "**Circuit Court**") in a matter styled *550 St. Clair Retail Associates, LLC v. Argo Tea, Inc., et al.*, case number 2016 CH 02547. In disregarding 550 St. Clair's judgment lien, the Debtor offers 550 St. Clair no adequate protection against its Lender's proposed priming lien, as required by Section 364(d)(1)(B) of the Bankruptcy Code. As a result, its instant motion must be denied.

## Background

4.  Golden Fleece filed its instant Chapter 11 case under Subchapter V of the Bankruptcy Code on October 27, 2021. The Debtor continues to manage its financial affairs as debtor-in-possession under Sections 1182 and 1184 of the Bankruptcy Code.

5.  On the date the petition was filed, the Debtor filed the instant Motion, setting the matter for hearing on three business days' notice. With the Motion, the Debtor seeks interim and final orders (a) granting the Debtor authority to enter into a debtor-in-possession loan (the "**DIP Loan**") pursuant to Sections 362, 364(c)(1), (2) and (3) and 364(d) of the Bankruptcy Code; and (b) vacating or modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Loan.

6.  The proposed DIP Loan provides that the Lender will advance up to a maximum of $145,000 on demand, and any combination of Lenders may agree to increase the loan limit to $500,000 without further court approval. The DIP Loan is to be fully secured by all of the Debtor's assets, including all accounts and other receivables, contract rights, machinery, equipment, inventory, general intangibles, intellectual property, causes of action, as well as products and proceeds of the same.

7.  In paragraph 12 of the Motion, the Debtor states that it does not have any secured creditors. As a result, on its chart summarizing the loan terms, and in the row entitled "Parties

with Interest in Cash Collateral" the Debtors states "Not applicable." And in the row entitled "Adequate Protection" the Debtors responds "n/a."

8.  Yet 550 St. Clair holds a judgment lien on substantially all of the Debtor's assets. This lien arose from a judgment 550 St. Clair obtained against Argo Tea St. Clair, LLC in the Circuit Court on December 21, 2015. Subsequently, 550 St. Clair brought an action against Argo Tea, Inc. (herein "**Argo**") to pierce the corporate veil and hold Argo liable for the judgment. In the early fall of last year, the trial court entered a judgment in favor of 550 St. Clair piercing the veil of limited liability and holding Argo liable for the debts of Argo Tea St. Clair, which then totaled $1,662,073.01. On May 6, 2021, 550 St. Clair issued citations to discover assets to Argo and served them on Argo's president, Arsen Avakian (herein "**Avakian**"). Avakian failed to appear as required by the citation, and the Circuit Court issued rules to show cause against him on June 15, 2021. The Debtor was also served with citations to discover assets. However, the Debtor failed to respond to the citations to discover assets and the Circuit Court issued a rule to show cause against the Debtor, which remains pending. While the Debtor subsequently appeared through counsel and provided limited documentation, it has not complied with its obligation to, *inter* alia, disclose all assets transferred to it by Argo and, through its counsel, indicated that it would not comply with this obligation because it anticipated filing this bankruptcy.

9.  On March 16 and March 17, 2021, 550 St. Clair also served citations to discover assets on Walgreens Business Services, LLC ("**Walgreens**"). On May 7, 2021, 550 St. Clair issued a third-party alias citation on Walgreens, who did appear in this matter. The citations to Walgreens contained statutory restraining provisions prohibiting the transfer of assets belonging to the debtor, Argo. Walgreens revealed that it was currently holding $394,455.06 in connection

3

with the sale of Argo Tea beverages and indicated that it would be putting a hold on this account until this matter is resolved.

10. While not responding to its own citation, Golden Fleece did file an *Emergency Petition to Intervene and Unfreeze Assets* involving the Walgreens citation with the Circuit Court. In this motion, Golden Fleece argued that it was the owner of all of Argo's personal property, including the Walgreens account receivable pursuant to a public sale of Argo's assets conducted under the Uniform Commercial Code (the "**UCC Sale**"). As a result, it requested that "the freeze on its account at Walgreens be released and the citation issued by [550 St. Clair] dismissed as to any assets of Golden Fleece."

11. 550 St. Clair responded to the motion noting that the UCC Sale was a sham transaction, conducted by a newly formed entity largely owned and controlled by the principals of Argo. Avakian incorporated the Debtor. Avakian was the president of the Debtor and is still listed by the Illinois Secretary of State as the president of the Debtor. Avakian is a director of the Debtor. According to the Debtor, Avakian owns 30.67% of common stock of Argo, and Avakian is the manager of Vicinet LLC, which owns 31.74% of the common stock of the Debtor. According to the Debtor, Glen Tullman is a director of both Argo and the Debtor. Glen Tullman owns 19.89% of the common stock of Argo and 30.13% of the common stock of Golden Fleece. With respect to the purported UCC sale, the sale was conducted on ten days notice. Notice was only published during a one week period, and the last publication occurred just two days before the sale. The advertisement did not identify any specific asset being sold, but rather simply described the property as "All property now owned or at any time hereafter acquired by any Debtor or in which any Debtor has or at any time in the future may acquire any right, title or interest * * * *" No other advertising was conducted in a manner that would engender competitive bidding. No auctioneer

4

was hired. The auction was held in the offices of Golden Fleece's counsel and it appears, unsurprisingly, that no one attended.

12. Aside from the convergence of ownership, Golden Fleece's employees, general business operations, telephone number, name, business address and assets were identical to those of Argo. Golden Fleece continues to operate under the same name "Argo Tea." It sells the same tea products sold by Argo under the same name, and it operates the same website under the same address, "argotea.com". Like Argo before it, Golden Fleece sells tea, inter alia, through Walgreens and other retail stores, and a number of its transactions with Walgreens predate the incorporation of Golden Fleece. Based upon these facts, 550 St. Clair argued that Golden Fleece is a mere continuation, or reincarnation of Argo.

13. Further evidence of the sham transactions is evident in the *Declaration of Candance MacLeod in Support of Debtor's Chapter 11 Petition & First Day Relief*, where the declarant vaguely states that "mistakes" were made with respect to a PPP loan application. To elaborate, on or around April 6, 2020, (after the UCC Sale) Argo applied for Paycheck Protection Program funds. Roy Yu, who Golden Fleece has described as its operating partner, was listed as applicant's primary contact. On April 22, 2020, Argo received $859,955.53 in Paycheck Protection Program funds. That day, Argo transferred all the Paycheck Protection Program funds it received to an account belonging to Golden Fleece. Golden Fleece issued an invoice dated April 22, 2020 to Argo in the amount of $859,412.00 for certain equipment previously belonging to Argo. However, the equipment, or at least some it of, appears to have been excluded from the assets Golden Fleece acquired at the UCC Sale it held and the purchase price for the equipment appears to greatly exceed the amount that Argo paid to acquire it in the first instance.

14. On February 9, 2021, Roy Yu prepared a Paycheck Protection Program Second Draw Borrower Application Form on behalf of Argo. The applicant certified to the lender that Argo was in operation on February 15, 2020 and had employees for whom the applicant paid salaries and payroll taxes or paid independent contractors. On February 12, 2021, Argo received $1,203,177.00 in Paycheck Protection Program funds. That day, Golden Fleece transferred $1,106,153.50 to an account belonging to Golden Fleece. That day, Argo transferred back $539,459.57, which Argo subsequently paid to the Illinois Department of Revenue and the New York State Department of Tax and Finance. Golden Fleece issued an invoice dated February 12, 2021, to Argo in the amount of $566,693.92 for certain equipment previously belonging to Argo. However, the equipment, or at least some of it, appears to have been excluded from the assets Golden Fleece acquired at the UCC Sale it held and the purchase price for the equipment appears to greatly exceed the amount that Argo paid to acquire it in the first instance.

15. After reviewing the briefs and conducting a hearing, the Circuit Court denied the Debtor's motion to unfreeze assets. The Debtor then filed its *Motion to Reconsider July 16, 2021 Order Denying Emergency Petition to Unfreeze Assets* which was similarly briefed. However, the Circuit Court refused to hear the motion until Golden Fleece complied with its obligations to respond to the citation issued to it. As a result, after two rounds of briefing before the Circuit Court, which provided Golden Fleece with numerous opportunities to argue the merits of its objection, the judgment lien in favor of 550 St. Clair upon the Walgreens account receivable and, arguably, on all tangible and intangible personal property of the Debtor stands.

## **Objection**

16. Section 5/2-1402(a) of the Illinois Code of Civil Procedure, 735 ILCS 5/2-1402(a), provides, *inter alia*, that "A judgment creditor * * * is entitled to prosecute citations to discover

assets for the purposes of examining * * * any * * * person to discover assets or income of the debtor * * * and of compelling the application of * * * assets or income discovered towards the payment of the amount due under the judgment." Pursuant to Section 5/2-1402(f)(1), "[t]he citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of * * * any property * * * belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to the judgment debtor * * * *"

17. Section 5/2-1402(m) provides that:

(m) The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor as follows:

(1) When the citation is directed against the judgment debtor, upon all personal property belonging to the judgment debtor in possession or control of the judgment debtor or which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation.

(2) When the citation is directed against a third party, upon all personal property belonging to the judgment debtor in possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation.

18. These provisions are not construed strictly, but liberally, and the statute gives courts broad powers to compel the application of discovered assets or income to satisfy a judgment. 735 ILCS 5/1-106; *Kennedy v. Four Boys Labor Servs.*, 279 Ill.App.3d 361, 367 (2nd Dist.1996). Consistent with this principle, courts have construed what constitutes the assets of the judgment debtor broadly to encompass assets in the hands of a third party. *Itasca Bank & Trust Co. v Thorleif Larsen & Sons, Inc.*, 352 Ill.App.3d 262, 266-267 (2nd Dist.2004). More specifically, where a third party has transferred the assets of the corporate debtor for consideration, with full knowledge of the existence of an outstanding claim against the corporation, then the judgment creditor may properly treat the proceeds from the sale of the assets as property of the corporate debtor, which is

recoverable pursuant to section 2-1402 of the Code of Civil Procedure. *Kennedy v. Four Boys Labor Servs.*, 279 Ill.App.3d at 367. "[T]o hold otherwise would allow a third-party to obtain the assets of a judgment debtor and then sell those assets to another third party, thereby precluding recovery." *Id.*

19. A citation lien is perfected on the date the citation is served, and a court may summarily compel the application of discovered assets to satisfy the judgment. *Broaddus v. Shields*, Case No. 08 C 4420, 2012 U.S. Dist. LEXIS 1329 *11 (N.D. Ill., E.D., January 5, 2012). Where a creditor obtained a judgment against a debtor, served citations to discover assets to the debtor and its successor, issued third-party citations to a bank where the debtor's successor had accounts, and then established successor liability in a post-judgment proceeding, the court ordered turnover of successor's funds from the third-party respondent bank, recognizing that "the law governing supplementary proceedings provides that the court may order a third party to turn over any assets so discovered to the creditor to satisfy the judgment." *Flow Capital Corp. v. Besh Holding Corp.*, Case No. 17 CV 810, 2020 U.S. Dist. LEXIS 193312, *22 (N.D. Ill., E.D., October 20, 2020)

20. Section 364(d) of the Bankruptcy Code provides that "(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if * * * (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."

21. Now with its emergency motion, subject to a carveout that does not include 550 St. Clair, the Debtor proposes granting the Lenders, as security for the DIP Loan pursuant to Section

364(d) of the Bankruptcy Code, "a valid, perfected, senior priming lien and security interest in all of the [Debtor's] Collateral."

22. However, the Debtor has failed to provide or, in fact, offer 550 St. Clair any adequate protection for its judgment lien on the Debtor's assets, including the Walgreens receivable, which violates Section 364(d)(1)(B) of the Bankruptcy Code. See, *In re YL West 87th Holdings I LLC*, 423 B.R. 421 (Bankr.S.D.N.Y.2010) (Grant of postpetition financing on a priming basis is impermissible, unless there is adequate protection to existing lien holders, something on which trustee bears the burden of proof.), *In re Windsor Hotel, L.L.C.*, 295 B.R. 307 (Bankr.C.D.Ill.2003) (Where debtor proposes to obtain financing by granting the postpetition lender a priming lien in collateral securing another creditor's prepetition claim, debtor's proposal should provide the prepetition secured creditor with same level of protection that it would have had if there had been no postpetition superpriority financing.), and *In re T.M Sweeney & Sons LTL Services, Inc.*, 131 B.R. 984 (Bankr.N.D.Ill.1991) (Debtor who seeks to "prime" existing lien to obtain post-petition financing has burden of demonstrating that adequate protection exists for preexisting lienholder.)  The mere fact that the Debtor disputes the validity of 550 St. Clair's judgment lien does not free it from this fundamental obligation.

23. Nor does the Debtor appear to be capable or providing 550 St. Clair with any form of adequate protection. The Budget attached to the Motion reflects the fact that the Debtor is losing money in every period but for Periods 5 and 7, the latter during which it anticipates receiving Walgreens' prepetition receivable. Backing out the loan proceeds and the Period 7 Walgreens receivable, between October 29, 2021 and January 21, 2022, the Debtor loses ($636,160.00). Of course, the Debtor is also budgeting $320,000.00 for its "Chapter 11 DIP Professionals" in this Subchapter V case. The proposed budget demonstrates that the Debtor will substantially dissipate

the assets upon which 550 St. Clair claims a lien, and the Budget does not demonstrate any prospect of generating positive cash flow to replace the dissipated asset.

24. On two separate occasions, the Debtors have attempted to invalidate 550 St. Clair's judgment lien in motions briefed and argued before the Circuit Court. Neither attempt has been successful. Now, the Debtor is indirectly making a third attempt through an emergency motion which utterly fails to mention 550 St. Clair's asserted judgment lien and the prior litigation involving the same. This effort is both improper and the Debtor's request for the entry of an order authorizing it to incur postpetition debt, especially postpetition debt which primes any liens held by 550 St. Clair, should be denied.

### Reservation of Rights

25. Notwithstanding anything herein and given the need of 550 St. Clair to file an expedited response to this emergency motion, this objection should not prejudice or constitute a waiver of, expressly or impliedly, or impair (i) any rights of 550 St. Clair to raise additional or supplemental objections to the Motion, (ii) seek relief from or modification of the automatic stay, (iii) request conversion or dismissal of the Debtor's bankruptcy case, and (iv) the ability of 550 St. Clair to any other right or remedy.

WHEREFORE, 550 St. Clair Retail Associates, LLC prays:

A. That the Court enter an order denying Golden Fleece Beverages, Inc. motion authorizing it to incur postpetition debtor on an interim or final basis, unless 550 St. Clair is provided adequate protection it its interests, including, without limitation, its judgment lien on the Walgreens receivable; and

B. For such other and further relief as the Court deems just and equitable.

          550 St. Clair Retail Associates, LLC

          By: _____
            One of its Attorneys

          Matthew T. Gensburg (ARDC# 6187247)
          Email: mgensburg@gcklegal.com
          Gensburg Calandriello & Kanter, P.C.
          200 West Adams St., Ste. 2425
          Chicago, Illinois 60606
          Phone: 312-263-2200

          Steven M. Dallas (ARDC#_____)
          Email: stevend@rfd-law.com
          William D. Dallas (ARDC#_____)
          Email: wdd@rfd-law.com
          Regas, Frezados & Dallas LLP
          20 N. Clark Street, Suite 1103
          Chicago, IL 60602
          Phone: (312) 236-4400